## McKNIGHT v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. October 23, 1899.)

No. 648.

**1. CRIMINAL LAW—TRIAL—IMPROPER ARGUMENT OF COUNSEL.**
It is prejudicial error for a court to permit counsel for the prosecution, over objection, to comment in argument to the jury upon the failure of the defendant to offer evidence of his previous good character. Such action, with the express approval of the court, in effect destroys the presumption of good character which the law raises in behalf of the defendant, and permits the jury to infer that his character is bad, because he has not produced proof to the contrary.

**2. SAME—EVIDENCE.**
In the trial of a criminal case, a letter written by defendant, containing reflections upon the conduct of a witness for the prosecution, the contents of which were previously known to the witness, is not admissible in evidence for the purpose of showing that the witness is prejudiced against the defendant, where no foundation has been laid for his impeachment thereby.

**8. NATIONAL BANKS—FALSE ENTRIES—INDICTMENT OF OFFICER.**
A count of an indictment, charging that defendant, as president of a national banking association, caused a false entry, which is set out, to be made in the books of the bank, purporting to show that a customer had deposited a certain sum to his general credit, when in fact, as defendant well knew, no such deposit had been made, is not insufficient, in the absence of an application for a bill of particulars, because it does not allege the manner in which defendant "caused" the entry to be made.

**4. SAME—EMBEZZLEMENT BY OFFICER.**
Where the facts averred in an indictment against an officer of a national bank for embezzlement show that defendant wrongfully used the bank's money in his care and under his control for the purpose of bribing certain city officials in his own interest, it sufficiently avers an appropriation to his own use, and is not vitiated by further averments that there was an

intent to wrongfully convert the money to the use of such officials, and that it was so converted.

5. SAME—MAKING FALSE ENTRIES—INTENT.

Under an indictment based upon Rev. St. § 5209, charging an officer of a national bank with having made false entries in its books with the intent to deceive the officers and directors of the bank and any agent appointed by the comptroller to examine the affairs of the bank, and to injure and defraud the association, it is sufficient to prove the wrongful intent in either particular charged.

In Error to the District Court of the United States for the District of Kentucky.

A. E. Richards and C. P. Breckinridge, for plaintiff in error.

R. D. Hill, for the United States.

Before TAFT, LURTON, and DAY, Circuit Judges.

DAY, Circuit Judge. The plaintiff in error, J. M. McKnight, having been indicted, convicted, and sentenced under section 5209 of the Revised Statutes of the United States, making penal certain acts of officers of national banks, prosecutes this writ of error to obtain a reversal of the judgment and sentence of the court below. The indictment contains numerous counts, which were disposed of by demurrer or dismissal, and the case went to trial upon thirty-five counts, upon all of which the jury rendered a verdict of not guilty, except as to three counts, being Nos. 39 and 50 of indictment No. 5,782, and No. 2 of indictment No. 5,783. Upon the trial of the case numerous exceptions were taken to the rulings of the court upon the admission and rejection of testimony, the charge given, the refusal of charges requested, objection to the indictment by demurrer, motions in arrest and for a new trial.

1. A principal ground of exception urged by the plaintiff in error arises from exception taken to the remarks of the government's special counsel in his closing address to the jury, and the court's direction to the jury in connection therewith. The comments of counsel and the rulings of the court grew out of the fact that the defendant had introduced no testimony tending to establish his previous good character. So much of the bill of exceptions as contains the history of this part of the case is as follows:

"While said special attorney was making for the government the closing argument in the case, he commented upon the fact that the defendant had not offered any evidence of good character, stating, in substance, that the defendant had the right to offer such evidence, and had not done so, and that, until he put his character in issue, the prosecution could not attack it; whereupon the counsel for the defendant interrupted the special attorney for the government, and moved the court to say to the jury that this statement was improper, that the law presumed the defendant to be a man of good character, and that the fact that he did not introduce testimony on that subject could not be commented upon; the counsel for the defendant stating that at the proper time the defendant would ask the court so to charge the jury. The court declined to say to the jury that the attorney for the government could not comment upon the fact that the defendant had not introduced testimony to prove himself to be a man of good character, but said to the jury: 'It is true, the law presumes that; but the prosecution may comment upon the absence of any evidence being presented upon that question,'—to which the defendant at the time objected and excepted, and still excepts. Under said permission from the court, and over the objection of the defendant, the special attorney

for the government proceeded to say to the jury in substance, and did say substantially, as follows, to wit: 'While the law presumes the defendant to be a man of good character, he does not have to rest upon this presumption. He can call his friends and neighbors to testify to his good character, but the prosecution could not call witnesses to attack his character until that was done. If he was a man of good character, why did he not call these friends and neighbors to prove it, and thus protect himself against these witnesses that his counsel has denounced as vultures? He did not stand like some poor mountain man,—taken away from home and friends. He is at home, and, if he could prove himself to be a man of good character, why did he not do so?' —to all of which the defendant at the time excepted, and still excepts. And on the next day, during the continuation of said closing argument. the special attorney for the government spoke of having tried men of high reputation for bad offenses, and who had speculated and lost money until the bank failed, and said that he had sympathy for such men, but that he had no sympathy for a man like the defendant, who was a 'confessed scoundrel,' a man 'without a character'; whereupon the counsel for the defense objected to these statements, which objection the court sustained, and directed the attorney for the government to withdraw the same, which he did, but proceeded to say 'that he (defendant) stands without a reputation in the community, and that he stands without such good character.' Thereupon the court interrupted the special attorney, and said, 'There is no evidence on that subject, and counsel should not say it;' whereupon the special attorney said: 'I withdraw it, then. I say that he has offered no evidence as to his character;' whereupon counsel for defendant again interrupted the special attorney, and said: 'We save an exception to that, and ask your honor to instruct the jury that it is improper.' Thereupon the court said to the jury: 'The law presumes the defendant innocent until he has been proven guilty to the exclusion of a reasonable doubt. The law presumes his character to be good; but, as the defendant might introduce evidence as to the fact of his good character, and did not, I think the district attorney can comment upon the fact that he has not.' To the last sentence in the court's statement to the jury the defendant at the time excepted, and still excepts. And thereupon, acting upon the permission of the court, and over the defendant's objection, the said special attorney again commented upon the fact that the defendant had offered no testimony as to his character, and again stated to the jury that the government could not attack the character of the defendant, as it had not been put in issue by him; to all of which the defendant objected and excepted, and still excepts."

It will thus be perceived that while the court recognized the well-established rule that, in the absence of testimony, the law presumes the accused to possess a good character, it nevertheless permitted the counsel for the government to comment upon the want of such testimony. The court refused to check the counsel in this line of argument when objections were made by counsel for the accused, and in this connection said: "It is true, the law presumes that; but the prosecution may comment upon the absence of any evidence being presented upon that question." Thereupon, under said permission, and over objections of the plaintiff in error, counsel proceeded to say: "While the law presumes the defendant to be a man of good character, he does not have to rest upon this presumption. He can call his friends and neighbors to testify to his good character, but the prosecution could not call witnesses to attack his character until that was done. If he was a man of good character, why did he not call those friends and neighbors to prove it, and thus protect himself against these witnesses that his counsel have denounced as vultures? He did not stand like some poor mountain man,—taken away from home and friends. He is at home, and, if he could prove himself to be a man of good character, why did he not do so?" The

following day, the counsel having made comments on the standing and character of the prisoner, the court sustained the objection thereto, and required the counsel to withdraw the objectionable remarks, but permitted him to repeat his observations of want of testimony as to defendant's character, and, when asked to state to the jury that said comment was improper, said: "The law presumes the defendant innocent until he has been proven guilty to the exclusion of a reasonable doubt. The law presumes his character to be good; but, as the defendant might introduce evidence of his good character, and did not, I think the district attorney can comment upon the fact that he has not." Nowhere in the subsequent proceedings or in the charge to the jury was anything said to qualify or change this ruling of the court. It amounted to an instruction to the jury that the effect of the failure of the accused to produce affirmative testimony of his previous good character might raise an inference against him as to his previous character and standing. Where the accused offers testimony in a criminal trial, seeking to show his previous good character, such testimony is substantive proof in his behalf, which the jury may consider in determining the likelihood of the commission of the alleged crime. Such testimony may of itself, or with other testimony, raise that reasonable doubt which requires acquittal. Where no testimony is offered, the accused can rest upon the legal presumption of good character. The question in this case is: May he be required to rest upon that presumption, qualified by the argument of the prosecuting attorney, made with the approval of the court, urging the jury to consider that the accused could have introduced testimony, had he been able to do so, showing his good character? To permit such course of proceeding would be to deprive the accused of the legal presumption in his favor. The suggestion of counsel, thus approved by the court, may be more detrimental to the rights of the accused than any testimony which could be adduced against him. In effect, it not only destroys the presumption in his behalf, but permits an inference that his character is bad because he has not produced proof to the contrary. While there is some confusion, and perhaps conflict, in the cases on the subject, sound principle, as well as the weight of authority, concurs in holding such comments, approved by the court, to constitute such substantial error as requires a reversal and new trial. The rule is well stated in 1 Bish. Cr. Proc. § 1119:

"It is the defendant's privilege, not his duty, to open by evidence the question of his character. The expense, the remoteness of witnesses, confidence in his case, and other considerations would often dissuade him therefrom, however certain of success therein. Hence, and because the state may not show a character bad which the defendant has not put in issue, the omission of this evidence does not justify the presumption that it is not good; and neither counsel nor the judge has the right to argue to the jury that it does, nor should they assume anything against it while deliberating on their verdict."

To the same effect: State v. Upham, 38 Me. 261; Fletcher v. State, 49 Ind. 124; Stephens v. State, 20 Tex. App. 255; State v. Dockstader, 42 Iowa, 436; Ackley v. People, 9 Barb. 610; People v. White, 24 Wend. 520; People v. Evans, 72 Mich. 367, 40 N. W. 473; Pollard v. State (Tex. Cr. App.) 26 S. W. 70.

2. It is argued that the court erred in excluding a certain letter, written by the plaintiff in error to the board of directors of the German National Bank, bearing date of September 15, 1896. For the purpose of this opinion it is not necessary to set out the letter in full. It was offered as tending to show the bias and feeling of one of the government's witnesses, R. E. Reutlinger. This witness having testified against the accused, on cross-examination (and subsequently by other witnesses) it was sought to be shown that he was present when the letter was read at the meeting of the board of directors. The letter contained references to Reutlinger's conduct, while in the bank, of a derogatory character. The argument is that this letter necessarily biased and prejudiced the witness in his feelings towards the accused. It nowhere appears that the witness had denied such bias or feeling, or that any foundation was laid for the proposed introduction of the letter as a contradiction of Reutlinger. It contained a lengthy and detailed account of the management of the bank's affairs by the accused, and its conduct in the hands of the witness and others. Its admission would have permitted the accused to prove his declarations in his own behalf not under oath. It was not a declaration of Reutlinger's, showing any bias or feeling, and did not come within the rules which permit the introduction of such declarations, either as cross-examination or direct testimony. The letter was properly excluded.

3. The fiftieth count of the indictment, omitting formal parts, is as follows:

"Fiftieth count: And the grand jurors aforesaid, upon their oaths aforesaid, do further present that J. M. McKnight, late of the district aforesaid, in the district aforesaid, on the 22d day of September, 1896,—he, the said J. M. McKnight, being then and there president of a certain banking association then and there known and designated as the German National Bank, which had been heretofore duly organized and established, and then existing and doing business in the city of Louisville, Kentucky, in the district aforesaid, all under the laws of the United States of America, in that behalf,—he, the said J. M. McKnight, president aforesaid, did then and there, in the district aforesaid, cause to be made in a certain book then and there belonging to and in use by the said association in transacting its said banking business, and then and there known and designated as 'Deposit Journal, No. 37A,' a certain entry in reference to the private account of the Germania Safety-Vault & Trust Co., which said entry was in the following words and figures, to wit:

'1318.      Germania S. V. & Trust Co.      $10,000.'

—And which said entry, so as aforesaid made in said book, then and there purported to show, and did in substance and effect indicate and declare, that the Germania Safety-Vault & Trust Co. had deposited, as of date aforesaid, in said bank, ten thousand dollars, subject to be checked upon by said Germania Safety-Vault & Trust Co., said entry being on left-hand page of said deposit journal, on the forty-ninth line of said page, and being the last entry on said page. And the grand jurors aforesaid, upon their oaths aforesaid, do further present that the said entry made as aforesaid was then and there false, in this: that said deposit of ten thousand dollars was not made in the said bank by the Germania Safety-Vault & Trust Co., or by any one for them in said bank, on the 22d day of September, 1896, or on any other date prior thereto, and in fact and in truth said deposit never was made to said private account of said Germania Safety-Vault & Trust Co.,—all of which J. M. McKnight, president aforesaid, then and there well knew; and that the said false entry was then and there by McKnight, president, caused to be made as aforesaid with the intent then and there on the part of him, the said J. M. McKnight, presi-

dent aforesaid, to deceive the officers and directors of said banking association and any agent appointed by the comptroller of currency to examine the affairs of said association, with the intent then and there on the part of him, the said J. M. McKnight, president aforesaid, to defraud the association, with the intent on the part of him, the said J. M. McKnight, president aforesaid, to injure the said association."

This is one of the counts upon which a verdict of guilty was returned, and is objected to because it is not sufficiently exact to charge the defendant with having "caused" the entry to be made, without setting forth the particular mode and manner by which this entry was so "caused." The indictment is not printed in the record in full. The crime of false entry, we are advised by counsel, was charged in four ways: (1) That the defendant made the entries; (2) that he made them and caused them to be made; (3) that he caused them to be made; (4) that he caused John Kerwin, special bookkeeper, to make them. He was convicted under count 50, which charges that he caused the entry to be made. The entry is incorporated in full into this count, which charges a deposit of $10,000 to the credit of the Germania Safety-Vault & Trust Company, while in fact said trust company had made no deposit in said bank; knowing which, McKnight caused the same to be made with the intent to deceive and defraud the officers and directors of the bank and any agent appointed by the comptroller to examine its affairs, with the intent to defraud and injure the said association. An indictment must sufficiently advise the accused of the nature and cause of the accusation against him, and be definite enough to enable him to plead it in bar in case he is again indicted for the same offense. It is well settled that such false entry need not be directly made by such officer of the bank. It is sufficient to procure or direct it to be made by another with the criminal intent required in the statute. Agnew v. U. S., 165 U. S. 36, 52, 17 Sup. Ct. 235. It is urged that he may be convicted by proof of some remote cause concerning which he is not advised in the indictment. This count does charge that the false entry of the deposit was caused by the defendant without any money having in fact been deposited, as he well knew; that with this knowledge, and with intent to deceive and defraud, the defendant caused the entry to be put upon the books. It is difficult to conceive of any other than a direct cause which could have been set in motion with this intent to deceive and defraud. Should the defendant be again indicted for having made, or by any means procured the entry in question to be made, the record of conviction under this count would clearly be available to him in bar. In the absence of an application for a bill of particulars, we think this count is sufficient. Such application, though addressed to the discretion of the court, should ordinarily be granted wherever the accused is liable to be surprised by evidence for which he is unprepared. Dunlop v. U. S., 165 U. S. 491, 17 Sup. Ct. 375. In Cochran v. U. S., 157 U. S. 287, 15 Sup. Ct. 628. Mr. Justice Brown, in his opinion, page 290, 157 U. S., and page 630, 15 Sup. Ct., says:

"Few indictments under the national banking law are so skillfully drawn as to be beyond the hypercriticism of astute counsel. But the true test is, not whether it might possibly have been made more certain, but whether it con-

tains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction."

4. Objections in various forms were taken to count No. 2 in the indictment in case No. 5,783, which is as follows:

"Second count: And the grand jurors aforesaid, upon their oaths aforesaid, do further present that J. M. McKnight, late of the district aforesaid, on the 6th day of February, 1896, in the city of Louisville, county of Jefferson, state of Kentucky, and district aforesaid, the said J. M. McKnight being then and there president of a certain banking association then and there known and designated as the German National Bank, located in the city of Louisville, state of Kentucky, which said banking association had been heretofore organized at Louisville, Kentucky, in said district aforesaid, and organized and created under and by virtue of the laws of the United States of America, he, the said J. M. McKnight, president aforesaid, did then and there unlawfully and willfully embezzle the moneys and funds of said banking association, to wit, the sum of two thousand dollars, lawful money of the United States of America, of the value of two thousand dollars (a more full and particular description of said money is to the grand jurors unknown), with the intent then and there on the part of him, the said J. M. McKnight, president aforesaid, to defraud said banking association out of said moneys and funds, and to convert the same to the use and benefit of one F. A. Britt and John W. Reeder, the said moneys and funds aforesaid of the said banking association being then and there in the custody and care and under the control of said J. M. McKnight as president aforesaid, and the said embezzlement aforesaid of the said two thousand dollars by the said J. M. McKnight being then and there made and done by him, the said J. M. McKnight, without the knowledge or consent of the then other directors, excepting himself, of the said banking association, or the then discount and exchange committee of said banking association; that is to say, that on the 6th day of February, 1896, in the city of Louisville, county of Jefferson, state of Kentucky, and district aforesaid, did cause, persuade, procure, and induce the said F. A. Britt and John W. Reeder to sign and execute and deliver to him, J. M. McKnight, president aforesaid, a note for two thousand dollars, bearing date February 6, 1896, due one year after date, and payable to the order of themselves, negotiable and payable at the German National Bank, and indorsed on the back thereof by said F. A. Britt and John W. Reeder by each of them signing their individual names thereon; that at the time of said execution, signing, and delivery of the said note by F. A. Britt and John W. Reeder, as aforesaid, they, and each of them, were hopelessly insolvent, and had no property whatever under the laws of the state of Kentucky subject to the payment of their debts, and this was then and there well known to said J. M. McKnight, president, as aforesaid, of the said banking association, who did then and there accept and place and cause to be placed said note of F. A. Britt and John W. Reeder, signed, executed, and indorsed as aforesaid, among the assets of said banking association, and did then and there pay and cause to be paid to the said F. A. Britt and John W. Reeder the said two thousand dollars, which was then and there the money and funds of said banking association, on said note, and as the pretended proceeds thereof, without charging or collecting any discount or interest on the said note; that said payment of said two thousand dollars as aforesaid was not then and there an actual loan or discount made on said note by said J. M. McKnight, president aforesaid, in good faith, of the moneys and funds of said banking association, but said money was promised to be paid and caused to be promised to be paid, as aforesaid, by J. M. McKnight, aforesaid, to F. A. Britt and John W. Reeder as a bribe by the said McKnight of the said F. A. Britt and John W. Reeder, and each of them, and so accepted by them, and each of them, to induce them to sign an agreement to stand together with Chris. J. Jenne, John E. Leatherman, R. E. King, R. O. Breuer, and G. J. Triick (they, together with said Britt and Reeder, being members of the board of aldermen of the city of Louisville, Kentucky) on any and all propositions of legislation that might come before said body of alder-

men, and to caucus with J. M. McKnight, and to secure for the friends of said Britt, Reeder, Jenne, Leatherman, King, Breuer, and Triick an equal division of the offices and profits that might arise therefrom; and by reason of their, the said F. A. Britt and John W. Reeder, and each of them, having signed said agreement, together with said Jenne, Leatherman, King, Breuer, and Triick, agreeing with one another and binding themselves to that effect, said two thousand dollars was paid and caused to be paid to said Britt and Reeder, as aforesaid, and said note was then and there executed, signed, delivered, and accepted, as aforesaid, merely to cover up and conceal said transaction aforesaid, and not as a binding or enforceable contract against said Britt and Reeder, and so understood by all parties thereto at the time,—all of which was then and there unknown to the said other directors and committee aforesaid, as well as the acceptance of said note and the payment of said moneys and funds of said association thereon, as aforesaid; and the said J. M. McKnight, president aforesaid, did then and there, with the intent aforesaid, feloniously, unlawfully, and willfully embezzle said two thousand dollars of the moneys and funds then and there belonging to said banking association, and in his care and custody and under his control, as aforesaid, and did then and there convert same to the use and benefit of said F. A. Britt and John W. Reeder. And the grand jurors aforesaid, upon their oaths aforesaid, do further present that the said F. A. Britt, then and there well knowing that the said J. M. McKnight was then and there president of the said banking association, feloniously, unlawfully, knowingly, and willfully, with the intent to defraud the banking association of said two thousand dollars, and to convert same to the use of himself and the said Reeder, did, on the said 6th day of February, 1896, feloniously, knowingly, and willfully aid and abet said J. M. McKnight, president aforesaid, to wrongfully, unlawfully, feloniously, and willfully embezzle the moneys and funds of said banking association, as aforesaid, to said amount of two thousand dollars, as aforesaid."

The objection urged is that it is charged that the money was converted to the use of Britt and Reeder, and not to the use of the accused. An analysis of this count shows the alleged misappropriation to have been accomplished by the execution of the note by Britt and Reeder, who were insolvent, and without property, for the sum of $2,000, payable to the order of themselves, and negotiable and payable at the German National Bank; that the note was made at the instance of McKnight, who thereupon paid them $2,000 of the bank's funds; that said payment was not a loan or discount in good faith, but was by McKnight paid to Britt and Reeder as a bribe to induce them to "caucus" with said McKnight, and to "stand together" with others (also aldermen) to secure for the parties who signed the agreement an equal division of the offices and profits that might arise therefrom; and that said note was executed and delivered merely to cover up and conceal the real transaction. The statute makes it an offense to embezzle the money of a bank. The term "embezzlement" has been used in many different statutes, and, as it is a statutory offense, but little aid can be derived from the construction put upon local statutes by the courts of the various states. As used in the statutes of the United States, in the first section of the act of March 3, 1875, "to punish certain larcenies, and the receivers of stolen goods" (18 Stat. 479), which enacts "that any person who shall embezzle, steal or purloin any money, property," etc., "of the United States, shall be deemed guilty of felony," etc., the term is defined by Mr. Justice Brown to be "the fraudulent appropriation of property by a person to whom such property has been intrusted, or into whose hands it has lawfully come." Moore v. U. S., 160 U. S. 269, 16 Sup. Ct. 294. It is averred that the money of the bank, in-

trusted to McKnight as president, under his care and control, was used for the purpose stated, namely, to bribe Britt and Reeder, among other things, to "caucus" with McKnight for the purposes set forth. McKnight's acts are charged to have been with an intent to defraud the association, as is required by the statute. It does not vitiate the count to aver that there was also an intent to convert the funds to the use of Britt and Reeder, and that the same were converted to their use. Such allegations may be treated as surplusage. 1 Bish. Cr. Proc. 478. The transaction, as set out in this count, shows McKnight's wrongful act in using the bank's money in his care and under his control for wrongful purposes of his own. We think this count is not open to the objections urged against it. In view of the construction the court puts upon this count, it is unnecessary to determine whether the fraudulent appropriation required to constitute embezzlement, as the term is used in this statute, may not be made out, although such appropriation, which deprives the owner of the fund or property intrusted to the defendant's care and control, is not to the use of the accused.

5. The sixth assignment of error is:

"In overruling the defendant's motion to instruct the jury as set out in request No. 15, which is as follows: 'The jury are instructed that they cannot convict the defendant under counts 49, 50, 51, and 52, being counts relating to the charge of causing certain entries to be made concerning the deposit ticket of $10,000 in favor of the Germania Safety-Vault & Trust Co., unless they believe from the evidence, beyond a reasonable doubt, that the defendant caused the alleged entries in the said respective counts set out to be made with a fraudulent intent to deceive the officers and directors of the said bank, or any agent appointed by the comptroller of currency to examine the affairs of said bank, with the further and additional fraudulent intent on the part of the defendant at the time to defraud the said banking association, and to injure said association.'"

The theory of this request to charge is that, because the indictment charges an intent to deceive the officers and directors of the bank, or any agent appointed by the comptroller of the currency, with intent to injure and defraud the association, the intent must be proven by the government in all the particulars charged. An examination of the Revised Statutes (section 5209), under which this indictment is framed, shows that these several intents are set forth disjunctively,— "with intent to defraud a person or association," "or any agent appointed to examine the affairs of the association," or "with intent to defraud an individual," or "to defraud a corporation." It is made an offense to do the acts named with any of the intents set forth in the statute, and it is sufficient to support an indictment to prove any one thereof, so far as such element of the crime is concerned, although the several intents may be cumulatively charged in the indictment. Crain v. U. S., 162 U. S. 633, 16 Sup. Ct. 952; Whart. Cr. Pl. (9th Ed.) § 158; 1 Bish. Cr. Proc. 434, 436.

The other assignments of error are as to matters which may not be material or arise in a new trial of the case. For error in permitting the government's counsel to comment in the manner set forth on the failure of the accused to produce evidence of his good character, and the observations of the court to the jury thereon, the case must be reversed, and remanded for a new trial.