## McKNIGHT v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. June 5, 1903.)

### No. 1,170.

**1. WITNESSES—CROSS EXAMINATION—SCOPE.**

It is the general rule in the federal courts that a party has no right to cross-examine a witness, without leave of court, as to any facts or circumstances not connected with matters stated in his direct examination.

**2. CRIMINAL LAW—INDICTMENT FOR EMBEZZLEMENT AS BANK OFFICER—PROOF OF OFFICIAL CAPACITY.**

An entry in a book identified as the minute book of a national bank, showing the election of defendant as a director and as president of the bank, together with evidence that he acted as such, is sufficient,

prima facie, to support an averment that he was president of the bank in an indictment charging him with embezzlement as such officer.

3. SAME—SECONDARY EVIDENCE OF DOCUMENTS—DEMAND ON DEFENDANT TO PRODUCE.

In a criminal case it is not necessary to prove notice or demand to produce an incriminating document, shown by the testimony of a witness to have been in possession of the defendant, as a foundation for the introduction of secondary evidence of its contents, since the defendant could not be compelled to produce it to be used as evidence against himself; but the requiring of such demand and the making of it in open court, where the jury had been first excused, was not error prejudicial to the defendant, nor was a statement by the court to the District Attorney in the presence of the jury that he could introduce a copy of the document, "provided you gave the necessary notice," where it was not stated what notice was meant, nor to whom.

In Error to the District Court of the United States for the Western District of Kentucky.

A. E. Richards, for plaintiff in error.

R. D. Hill, for the United States.

Before LURTON and SEVERENS, Circuit Judges, and SWAN, District Judge.

LURTON, Circuit Judge. This is a writ of error sued out by the plaintiff in error, who, for the fourth time, has been convicted upon an indictment charging him with embezzlement of the funds of a national bank of which he was the president. The several opinions of this court reversing former judgments of conviction may be referred to for the details of the case and the grounds of our action upon former writs of error. McKnight v. U. S., 97 Fed. 208, 38 C. C. A. 115; Id., 111 Fed. 735, 49 C. C. A. 594; and Id., 115 Fed. 972, 54 C. C. A. 358.

1. The plaintiff in error has assigned as error that he was not permitted on cross-examination of the witness Reutlinger, teller during the time of McKnight's alleged wrongdoing, to ask whether McKnight had not frequently lectured him for shortages in his cash accounts as teller. This assignment is not well taken. Before any objection was made, the following occurred:

"Q. Were not your accounts as teller frequently short? A. Yes. Q. During that time? A. Yes, sir; they were. Q. Wasn't there a shortage in the money account.in your teller's cage? A. The same as with any other teller, you know. The teller is responsible for any errors the bookkeepers make. Q. Didn't Mr. McKnight frequently lecture about the shortage in your cash account? A. Now and then. By Mr. Hill: I object to that. I haven't said anything about that."

. Judge Richards urged its competency for the purpose of showing the witness' animosity toward the defendant. The court ruled that the evidence was not proper cross-examination, but that the witness might be asked as to his feelings toward defendant, but that it.was inadmissible to "go into the reasons" for such feeling. Thereupon the attorney for defendant called attention to the fact that no objection had been made until the witness had answered, whereupon the

¶ 3. See Criminal Law, vol. 14, Cent. Dig. § 888.

court said: "The district attorney did not object until after the question was answered. We will just let it stand." Subsequent efforts were made to further cross-examine in respect to the shortages of the witness and Mr. McKnight's "lectures" in consequence, which, on objection, were excluded, with the statement by the court that the witness might, at a later stage, be recalled and examined as to his accounts as teller. The attorney thereupon avowed that, if permitted, the witness would answer that shortages had occurred in his account as teller, and that McKnight had "lectured" him on that account.

In Wills v. Russell, 100 U. S. 621, 625, 25 L. Ed. 607, Justice Clifford, for the court, said:

"The established rule of practice in the federal courts and in most other jurisdictions in this country is that a party has no right to cross-examine a witness, without leave of the court, as to any facts or circumstances not connected with matters stated in his direct examination, subject to two necessary exceptions: He may ask questions to show bias or prejudice in the witness or to lay the foundation to admit evidence of prior contradictory statements. Subject to those exceptions, the general rule is that, if the party wishes to examine the witness as to other matters, he must, in general, do so by making him his own witness, and calling him as such in the subsequent progress of the case."

We have in several cases had occasion to apply the general rule thus stated. Seymour v. Malcolm McDonald Lumber. Co., 58 Fed. 957, 7 C. C. A. 593, 16 U. S. App. 249, 250; Montgomery v. Ætna Life Ins. Co., 97 Fed. 913, 38 C. C. A. 557; O'Connell v. Pennsylvania Co. (C. C. A.) 118 Fed. 989. But the ruling in this case was clearly harmless, even if it be admissible to inquire as to facts from which ill will might be inferred, because the very facts which the witness was desired to prove had been proved before any objection was made, and, upon the insistence of the attorney for the defendant, allowed to remain as part of the evidence in the case because not objected to.

2. It is next assigned as error that the court permitted to be read from a book purporting to be the minute book of the bank a minute showing the election of Mr. McKnight as a director, then as vice president, and then as president of the German National Bank. The witness had before testified that he was a national bank examiner, and that as such he had made an examination of the German National Bank in January, 1897, and taken possession of its effects by direction of the comptroller; and that he then took possession of the books he found in use in the bank, and that the minute book from which he later read the minute in question was one of the books then in the bank which came to his possession. Prior to this evidence, Mr. Adolph Reutlinger had testified that he had been connected with the bank from its origin, first as cashier, then as president, and that he was the vice president at the time the bank was closed. This witness also testified that certain books, then shown him, were the books used by the bank during the time it was in business. One of the books so identified was the minute book showing the election of Mr. McKnight both as director and then as president, and the same book from which the minutes objected to were read. The objection to the reading of the minutes only came after the minute book

had been thus identified by the two witnesses referred to. The objection made was a general objection, and did not specifically point out any ground of objection. We think the minute was sufficiently identified as a minute from the book of the bank, and that the minute read, together with evidence that McKnight was acting as president of the bank at the time of the alleged embezzlement, was at least prima facie evidence that he was the president of the bank, as charged in the indictment. That he was acting as president and claiming to be president at the time of the alleged embezzlement was enough to support the averment that he was in the control and custody of the bank's funds as president, for his pretension to hold the office was an admission that he was such an officer, and he would be liable though not de jure such. Wharton's Criminal Law, § 1589; United States Bank v. Dandridge, 12 Wheat. 64, 70, 6 L. Ed. 552.

3. One ground upon which we reversed the former judgment in this case was for the error of the trial judge in permitting the defendant to be called upon, in the presence of the jury and during the trial, to produce an alleged original document of a highly criminating character. The procedure then had was held to be prejudicial to the constitutional rights of the defendant under the fifth amendment to the Constitution, providing that a defendant should not be compelled to give evidence against himself. Inasmuch as a defendant could not be compelled to produce any such criminating document, we held that neither notice nor demand to produce same was necessary, but that secondary evidence might be made in respect of any document which the evidence should show in the possession or under the control of the defendant. The grounds for the ruling and authorities upon which it was predicated need not be repeated. The procedure then pointed out met with the unanimous approval of this court then, and is again unanimously reaffirmed. 115 Fed. 972, 980, 54 C. C. A. 358.

In Dunbar v. U. S., 156 U. S. 185, 15 Sup. Ct. 325, 39 L. Ed. 390, no question was made as to the prejudicial effect of the demand to produce an original letter, and the case is, therefore, not an authority in point. Upon the last trial the government offered in evidence what purported to be a true copy of the same document referred to in the former opinion. The defendant objected, without assigning any ground. Thereupon the following occurred:

"By the Court: Pending that objection, I will ask you if that is a correct copy of the paper you think that Mr. McKnight showed you? A. Yes, sir. Q. Is that a correct copy of the paper that you had in the bank there that you have spoken of? A. I think it is. Q. Your best recollection is that that is a correct copy? A. Yes, sir; that is my best recollection. Q. Now, where is the original? By Mr. Hill: I don't know. You mean the original paper? By the Court: The original paper from which this copy was made. By the Witness: This is not the original paper. The copy was made in pencil, and then this is a copy in ink. By the Court: You can read that paper, provided you gave the necessary notice. Mr. Marshal, you may let the jury retire. By Mr. Ronald: I want to make an exception to the statement of your honor that Mr. Hill could introduce that paper provided he had given the requisite notice. I want to object to the statement of the court."

The record then shows that at this point the jury retired from the courtroom. In their absence the court required the District At-

torney to show that he had theretofore given notice to the defendant and his attorneys that evidence of the contents of said document would be offered if the original was not produced, and to then and there demand whether the said original would be produced. The same not being forthcoming, the court directed that the journal should show that, in the absence of the jury, notice and demand had been proven and made, and that "the document was not produced." Thereupon the jury returned, when the court said, "He can read the paper now."

The proceedings which occurred in the absence of the jury were doubtless due to the failure of the usually astute trial judge to discriminate between the proper preliminary steps for the introduction of secondary evidence in a civil cause as affected by the provisions of the fifth amendment when sought to be applied in a criminal prosecution. We endeavored to point out this distinction, and the consequent needlessness of giving notice or making a demand which could not be enforced, in an opinion upon the former writ of error. By some inadvertence neither court nor counsel seem to have had in mind the meaningless of the procedure, under the opinion upon this precise point upon the former writ of error. Nevertheless, it is difficult to see that the error of the court worked any harm to the defendant. If the jury were not suffered to know that the demand had been made and production refused, no harm could come to the defendant because the government had been required to conform to a practice applicable to civil but not to criminal causes. To say to a defendant in the presence of a jury, "If you do not produce such and such a document, we will prove its contents by the best evidence within reach," is a method of compelling a defendant to become a witness against himself, as most unjust inferences may be drawn from a refusal to comply with such a demand, and even more dangerous results from compliance. It was upon this ground that upon the former writ of error we held the defendant to have been illegally prejudiced by the demand made upon him in the presence of the jury. But upon the trial now under review the only thing which occurred in the presence of the jury was the ruling of the court, "You can read that paper, provided you gave the necessary notice." This observation of the court in the presence of the jury is supposed to bring the matter within the ruling upon the former writ of error, and the exception reserved is because of this statement in the presence of the jury. What might they reasonably infer from the statement that the paper could be read, "provided you gave the necessary notice"? Notice to whom? Notice of what? Neither did the statement nor ruling imply that a "notice" had been given, for it was interrogative in form. Even under all the surrounding circumstances it would be most extravagant to assume that the defendant was or might have been prejudiced, for the jury must be presumed to act only upon reasonable inferences and implications. A reversal simply because of this statement in the presence of the jury, or because of the proceedings which occurred while they were excluded, would not be warranted, for we could justify it only upon the assumption that the jury might reasonably infer from the occurrences which came under their observa-

tion that the defendant had, upon notice and demand, refused to produce the document demanded from him with all of the prejudicial inferences inferable from such a circumstance.

We trust we shall never be reluctant to do our duty as a revising tribunal where the constitutional rights of a defendant have been disregarded or frittered away. In the circumstances of this case we are unable to perceive any reasonable ground for the apprehension that the rights of the defendant were prejudiced by either the statements or rulings of the trial judge in respect of this matter, or by the proceedings which occurred in the absence of the jury, and could not, therefore, be harmful to him.

4. Error has been assigned upon the admission of certain statements made by Reeder and Britt to one Edmunds in the absence of McKnight. Edmunds was, on his evidence, an agent for McKnight to procure the signature of Reeder and Britt to the so-called "caucus agreement." The evidence objected to was concerning an objection made by Reeder and Britt to a particular sentence in the agreement as originally prepared by McKnight. This was communicated by Reeder to McKnight, and the paper as finally signed did not include this objectionable feature. There was no error in this. What was said to Edmunds in respect to the paper he was to get signed was competent, the relation of agent and principal existing between McKnight and Edmunds.

There are a number of other errors assigned. We have noticed above all of those pressed in the argument. The remainder have, however, been examined with care, and we find none of them well taken.

The charge was full and fair, and was a clear presentation of the case. The result is that we find no error, and the judgment is affirmed.