# WOODWARD *v.* UNITED STATES.

---

CRIMINAL LAW; TRIAL; EMBEZZLEMENT; CHARGE TO JURY; PRINCIPAL AND AGENT; MISCONDUCT OF COUNSEL.

1. While a demand made upon the accused in a criminal case, in the presence of the jury by the prosecution, for the production of documentary evidence said to be in the possession of the accused, is improper, such a demand will not call for the reversal of a judgment of conviction, where the contents of the documents were afterwards testified to by a witness for the prosecution, without objection by the accused, and the contents of such documents, as testified to, did not incriminate the accused, and had little or no bearing upon his guilt or innocence when considered in connection with the other evidence in the case.

2. On an appeal by the accused from a judgment of conviction in a criminal prosecution for embezzlement, assignments of error based upon exceptions to the exclusion of testimony offered by the accused and the admission of evidence offered by the prosecution, and relating to collateral matters occurring before and after the transactions surrounding the commission of the crime, and to matters tending to discredit the evidence of the prosecuting witness, and as establishing a motive on his part to prosecute the accused; were *held* not to show reversible error, it appearing that however much the testimony of the prosecuting witness as to such collateral matters may have been

false, and whatever his motive may have been, in his testimony as to the actual commission of the crime charged, he was corroborated to an extent which justified the finding of guilt by the jury.

3. In a criminal prosecution for embezzlement, where the accused admitted receiving money in this District, sent to him from New York, but claimed that he returned it to the sender in New York, it is necessary to a conviction for the prosecution to show that intent to convert the money existed in the mind of the accused while he was in this District. If the intent was not formed until after he left the District, the venue of the crime could not be laid here.

4. Expressions in the trial court's charge to the jury in a prosecution for embezzlement of money, which, standing alone, would have been erroneous in that they would have permitted the jury to find the accused guilty even if he had formed the intent to convert the money to his own use while beyond the limits of the District of Columbia, were *held* not to constitute reversible error, when read in the light of other parts of the charge and special instructions granted, which clearly told the jury that, in order to find the accused guilty, such intent must have been formed in the defendant's mind while he was within the District.

5. Where an agent to whom money was sent by his principal, to be expended in the business of the principal, on the representation of the agent that it was needed for that purpose, wrongfully converts it to his own use, he is guilty of the crime of embezzlement.

6. It is not error for the trial court to refuse to discharge the jury in a criminal trial, because the prosecuting officer, in response to a reference made in the address of counsel for the defendant to the jury, to a transaction between the accused and the complaining witness, and an inquiry whether that was the conduct of a crook or an honest man, —remarked in his closing argument to the jury that "we are not dealing here with an ordinary crook; we are dealing here with a clever confidence man." (Citing *Fields* v. *United States*, 27 App. D. C. 433.)

No. 2342. Submitted January 2, 1912. Decided March 4, 1912.

HEARING on the appeal by the accused from a judgment of conviction of the Supreme Court of the District of Columbia, in a prosecution for embezzlement.      *Affirmed.*

The facts are stated in the opinion.

*Mr. Henry E. Davis, Mr. Richard A. Ford,* and *Mr. Wallace D. McLean* for the appellant.

*Mr. Clarence R. Wilson,* United States District Attorney, for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The appellant, Robert G. Woodward, alias Robert Graham, alias John Henry Roper, defendant below, was convicted in the supreme court of the District of Columbia of the crime of embezzlement. From the judgment sentencing him to imprisonment, he prosecutes this appeal.

The facts, briefly stated, are that defendant was in the employ of one Ordway, a manufacturer of a certain patent medicine in New York. In May, 1908, Ordway, while in Europe, received a letter from defendant informing him that a letter had been received from the Internal Revenue Bureau, in Washington, requesting him to show cause why the medicine should not be declared a beverage. Defendant, as agent for Ordway, entered into negotiations with the Department, during which he represented to Ordway that it would be necessary to employ one Lamar, a lawyer in Washington, and received $5,000 from Ordway as a fee to be paid to Lamar. The money was sent by carrier from New York, and delivered to defendant in Washington. It developed that Lamar had not been engaged by defendant, and never received the money,— hence, the charge of embezzlement. Defendant admitted receiving the money, but testified at the trial that he returned it to Ordway. On this point the evidence of the guilt or innocence of defendant turned.

Counsel for defendant present nineteen assignments of error, which they have grouped under six heads. We shall consider them in their order.

The first assignment charges an improper demand by counsel for the government, upon defendant, for the production of a letter claimed to be in his possession. The letter related to a preliminary matter. Ordway had been notified by defendant that notice had come from the Department at Washington, requesting cause to be shown why the medicine should not be

treated as a beverage. Ordway was testifying to the contents of his reply to this letter, when counsel for defendant objected and demanded that the letter should be located, to which counsel for the government replied, "Are you standing upon your right to have us give notice to you to produce the letter? Because, if so, we now give you notice to produce that if you have it." Counsel for defendant objected to the statement of the district attorney, on the ground that it was an invasion of the rights of defendant, in that it placed him in the position of refusing, in the presence of the jury, to produce evidence against himself; whereupon defendant moved ·the court to withdraw a juror and discharge the panel from further consideration of the case. The court denied the motion, to which an exception was noted. Witness then proceeded to state the contents of the letter in substance as follows: "He stated in that letter that the question had arisen before with us, it was a question that arose frequently with the Department; they examined medicine to see the percentage of alcohol, and to take or send a bottle to Washington and request them to analyze it; and they would find it was medicated so high, and the dose so small, that it was impossible to be used as a beverage; that was the substance of what witness wrote defendant." No objection was interposed to the admission of this evidence. This letter was written long before defendant received the money in Washington, and, so far as the record discloses, conceived the idea of committing the crime charged. There was nothing incriminating in the letter, nor anything tending to establish the guilt of defendant. It at most tended to show that defendant was acting as Ordway's agent in the negotiations at Washington. Defendant never denied having conducted these negotiations, and the letter was a mere suggestion to defendant of a method of procedure to meet the objections of the Department. There was some conflict in the evidence as to the letter having, in fact, been written, and also as to defendant's agency. But these issues were resolved by the jury against the defendant.

It is well settled that a defendant in a criminal trial can-

not be required to produce documents in his possession which will tend to incriminate him, and it has been held that a demand for the production of such evidence, made upon a defendant in the presence of the jury, places the accused in the position of having to either produce the documents, deny or explain his possession of them, or by his silence permit inferences to be drawn against him which are as prejudicial as positive testimony. The Federal cases in which this rule is most clearly and strongly expressed is *McKnight* v. *United States,* 54 C. C. A. 358, 115 Fed. 972, and 61 C. C. A. 112, 122 Fed. 926.

In that case, however, the demand was made by the court for the production of the document upon which the guilt or innocence of defendant depended. The demand was made under the mistaken belief that it was necessary to lay the foundation for the admission of secondary evidence to prove its contents.

The present case can be distinguished without difficulty. The evidence was not self-incriminating, and the circumstances were not such as to convey to the jury the impression that important evidence was being withheld by the defendant. And since the contents of the letter were admitted and went to the jury without objection, nothing remained upon which the jury could base a presumption that defendant was withholding in-criminating evidence. We must also assume that the jurymen were men of average intelligence, capable of understanding from Ordway's statement of the contents of the letter, when considered in connection with the other evidence in the case, that it had little or no bearing upon the guilt or innocence of defendant.

The second and third groups of assignments of error and exceptions will be considered together. They relate to the exclusion of testimony offered by defendant and the admission of testimony offered by the government. The vast number of exceptions and assignments of error embraced in these two groups forbid the separate discussion of each; neither do we think it essential to the proper consideration of the case. The

evidence of the actual commission of the crime charged is embraced within very narrow limits. It is conceded by the defendant that Ordway received notice from the Department in Washington to show cause why his medicine should not be treated as a beverage; that he was at that time in Ordway's employ; that Ordway was abroad, and defendant was managing his business; that correspondence passed between them in relation to this matter; that defendant came to Washington and took the matter up with the Department as agent for Ordway; that he telephoned from Washington to Ordway, denying, however, that he asked Ordway to send him money; and that the same evening a messenger arrived from New York and delivered to defendant $5,000. At this point the criminal transaction begins. Defendant claims he returned the money; Ordway claims he did not. If it was not returned, defendant's guilt is established; for by his claim that he returned it, he disclaims having used it in the interest of his principal. The evidence as to this transaction shows that defendant telephoned to New York for Ordway to send him $5,000 to pay the attorney, Mr. Lamar. The message was not taken by Ordway, but by an employee, who testified to its contents. The messenger testified to delivering the money to defendant at the New Willard Hotel in this city, and to defendant's statement that it was to pay Lamar. Ordway testified that when defendant returned to New York he told him that the money had been paid to Lamar. In this Ordway is corroborated by a witness who was present and heard the conversation.

The exceptions relate largely to collateral matters occurring before and after the transactions surrounding the commission of the crime. Many of them relate to matters tending to discredit the evidence of Ordway, and as establishing a motive for Ordway to prosecute the defendant. However much of Ordway's testimony as to these matters may have been false, and whatever his motives may have been, as to his testimony relative to the actual commission of the crime, he is corroborated to an extent which justifies the finding of guilt by the jury. We have examined each of the numerous exceptions

to the admission and exclusion of evidence, and find no reversible error.

The fourth and sixth groups of the assignments of error and exceptions relate to certain instructions given in the charge of the court. The two instructions given the jury in the general charge of which defendant complains are as follows:

"You have now to understand what the law means by the expression, 'convert to his own use.' I can illustrate that better than it could be defined. By that expression the law contemplates any act of dominion over the money, with the intent, at the time, of making that money his own. If Mr. Woodward, as conceded, came into possession of this money, and, as claimed by the government, if he exercised an act of dominion over that money in simply handing it over to the clerk of the New Willard to keep in the safe, and if it was with the intent to make that money his own, that was a conversion to his own use; because conversion to one's own use of an article or of money does not necessarily require that he shall have disposed of it in a particular way, like spending the money. It only requires that he shall have made it his own. The law regards money as made one's own, when he exercises any act which disposes of it even temporarily, when, at the time of performing that act, he intends to permanently make it his own. That is one theory, upon which the government claims the evidence demonstrates a particular act which amounts to a conversion. If you find, as the government claims, that Woodward, the defendant, having in his possession the money, delivered it over to the clerk of the hotel, to be kept in the safe all night; and if you further believe that, when he did that, he intended to permanently make that money his own,—that would be a conversion such as the law contemplates. * * * The other phase of the case under which the government claims the evidence shows a conversion is this: The government claims the defendant, Woodward, having admitted that he got the $5,000, and having testified that he gave that identical $5,000 back to Mr. Ordway on coming again to New York, has testified falsely in that regard,

and that he did not give the money back to Mr. Ordway, as he claims; and that that fact will settle the question by proving that he has converted the money to his own use, even though you were not satisfied that he put the money in the safe of the New Willard Hotel, having at the time an intention to make it his own. With respect to that second contention of the government, upon the point of conversion, if you do find that Woodward has falsified when he says he gave that money back to Mr. Ordway, that will justify you in finding that he converted it to his own use, although you cannot decide what he did with it; because admitting, as he does, that he had possession of the money, and undertaking to account for its return to Ordway in a way which you do not believe, that still leaves him in possession of the money, and, from the fact that he denies having retained possession of the money, you will be justified in inferring that he converted it to his own use."

The latter instruction, if standing alone, would be erroneous. It, in effect, charged the jury that, although they should find that defendant had no intent to convert the money to his own use in the District of Columbia, but afterwards failed to return it to Ordway, they would be justified in finding from that fact alone that he converted it to his own use. This leaves out of consideration the venue of the crime. Criminal intent in the mind of defendant to convert the money to his own use in this District, since he had the money in his possession, is all that was necessary to lay the venue here. If the intent was not formed, however, until after he left the District of Columbia, the venue of the crime could not be laid here. He was in five separate jurisdictions after leaving here, before he could have returned the money to Ordway, in New York; it was therefore necessary for the jury to find that the intent to convert the money existed in defendant's mind while he was in this District.

This instruction should be considered not only in the light of the preceding one, but in connection with the following prayer granted at the request of counsel for defendant: "In

order to find the defendant guilty under the second count of the indictment, you must find from the testimony that the defendant, as the agent, attorney, clerk, or servant of the certain Ordway in the said count mentioned, received into his possession or under his care, by virtue of such his relation to the said Ordway, the sum of money mentioned and described in the said count and as the property of the said Ordway, and that so being in the possession of the said money as the property of the said Ordway, he, the defendant, in the District of Columbia, wrongfully converted the same to his own use, or, in the said District, fraudulently took, made away with, or secreted the same, with the intent to convert the same to his, the defendant's, own use."

These instructions, read in the light of the evidence, are briefly to the effect that if the jury believe that the defendant received the money and placed it in the safe at the New Willard Hotel, subject to his withdrawal; and further believe that he did not return the money to Ordway, in New York, as he claims,—they would be justified in believing that, when he put the money in the safe, he did so with the intention of converting it to his own use.

Each case must be determined in the light of its own facts, and in embezzlement the exact time and place of conversion, like intent, must frequently be inferred from the actions of the accused, as well as the circumstances shown to exist in connection with the transaction. The jury may well have inferred that the intent to convert the money to his own use existed in the mind of the defendant when he telephoned to New York. If so, the conversion followed when he came into possession of the money and first exercised control over it. The issue of fact on which intent and conversion must be predicated is so narrow that, as suggested in the instructions, they must be gleaned from the defendant's exercise of control over the money when he received it, and his failure to return it in New York. We think, therefore, that while the instructions, owing to the unfortunate custom of not reducing them to writing, are somewhat ambiguous, and not as clearly expressed as they other-

wise would have been, when construed together they are such
that the jury could not have been misled in determining where
and when defendant formed the intent to convert the money
to his own use.

Defendant complains of the refusal of the court to give
certain instructions requested. The instructions refused were
to the effect that, under the evidence, defendant could not be
convicted of the crime of embezzlement. It is claimed by
counsel that defendant could, at most, have been convicted of
the crime of larceny. Our statute defining embezzlement is
as follows: "If any agent, attorney, clerk, or servant of a
private person or copartnership, or any officer, attorney, agent,
clerk, or servant of any association or incorporated company,
shall wrongfully convert to his own use, or fraudulently take,
make away with, or secrete, with intent to convert to his own
use, anything of value which shall come into his possession or
under his care by virtue of his employment or office, whether
the thing so converted be the property of his master or em-
ployer, or that of any other person, copartnership, association,
or corporation, he shall be deemed guilty of embezzlement."
D. C. Code, sec. 834 [34 Stat. at L. 1325, chap. 854].

Defendant's agency was clearly established. According to
the evidence, which the jury must have accredited, the money
was sent by Ordway for a perfectly legitimate purpose. It
was given into defendant's possession for this purpose, on his
representation that it was so needed. It was not money merely
in the custody of defendant, although this would have been
sufficient, since the common-law distinction between custody
and possession does not exist under our statute.

Counsel contend, however, that inasmuch as defendant came
into the possession of the money by a fraudulent trick or de-
vice with intent to steal it, the crime is larceny, and seem to
rely upon their conclusion gathered from a review of the Cali-
fornia cases in *Grin* v. *Shine,* 187 U. S. 181, 47 L. ed. 130, 23
Sup. Ct. Rep. 98, 12 Am. Crim. Rep. 366, as follows: "Where
one honestly receives the possession of goods upon a trust, and
after receiving them fraudulently converts them to his own

use, it is a case of embezzlement. * * * But, where the possession has been obtained through a trick or device, with the intent, at the time the party receives it, to convert the same to his own use, and the owner of the property parts merely with the possession, and not with the title, the offense is larceny." In these cases the trick or devise consisted in gaining possession of the property, where the owner had no intention of yielding possession or intrusting the property to another. That is not the present case. Ordway, when he despatched the money to Washington, not only intentionally yielded possession of it to defendant, but intrusted it to him as his agent in charge of his business here, to be used, as he supposed, for a lawful purpose.

The remaining assignment of error relates to the alleged misconduct of counsel for the government in his argument to the jury. Counsel for defendant in his argument referred to a particular transaction between defendant and Ordway which he regarded as indicating good faith and frankness on the part of defendant, and said to the jury: "Was that, gentlemen, the conduct of a crook, or was that the conduct of an honest man?" Whereupon counsel for the government, in his closing address to the jury, referred to the argument of the counsel for defendant, saying: "Mr. Davis has argued to you, gentlemen, that the action of the defendant in relation to the itemized statement of the charge of May 29th, 1908, was not the action of a crook; but, gentlemen, we are not dealing here with an ordinary crook, we are dealing here with a clever confidence man." Defendant, by his counsel, objected and moved the court to discharge the jury from further consideration of the case. The court denied the motion, and refused to give the jury any instruction relative to this remark. In the light of counsel's argument in support of the former assignment, to the effect that defendant, according to the evidence, procured the money from Ordway by a fraudulent trick or device, he is hardly in position to complain that counsel for the government exceeded the rules of propriety in his argument. In that view of the evidence, the remark was merely

the conclusion which the evidence tended to establish. *Fields v. United States,* 27 App. D. C. 433.

We find no reversible error. The judgment is affirmed, and it is so ordered. *Affirmed.*