## In re KINNANE CO.

### (District Court, S. D. Ohio, W. D. September 15, 1914.)

### No. 5387.

1. BANKRUPTCY (§ 386*)—OBJECTIONS TO COMPOSITION—BURDEN OF PROOF.

The consideration tendered by a bankrupt in composition should be substantially equivalent to what his estate would pay if fully administered in bankruptcy; but to defeat confirmation of a composition, on the ground that the estate will pay more, the objecting creditors have the burden of proving that fact.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 606; Dec. Dig. § 386.*]

2. BANKRUPTCY (§ 380*)—COMPOSITION—NOTICE OF APPLICATION.

All creditors must be notified of a proposed composition, whether or not they have proved their claims, and must be honestly advised of the true condition of the debtor's affairs.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 577; Dec. Dig. § 380.*]

3. BANKRUPTCY (§ 379*) — COMPOSITION — SUBSTITUTED OFFER — NOTICE TO CREDITORS.

Where, after a composition has been offered to creditors, a new amended offer is made, the court is without authority to confirm it, until it has been again submitted in the same manner as an original offer, and all creditors have had an opportunity to accept or reject it.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 576; Dec. Dig. § 379.*]

4. BANKRUPTCY (§ 375*)—COMPOSITION.

Where there is a fatal defect in the proceedings relating to an offer of composition, and a majority of the creditors, representing the greater part of the bankrupt's indebtedness, are apparently willing to accept the offer made, the court will reject such offer, but may permit the bankrupt to make a new offer, if the bankrupt desires so to do.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 578–585; Dec. Dig. § 375.*]

5. BANKRUPTCY (§ 242*)—EXAMINATION OF BANKRUPT.

Although the Bankruptcy Act gives latitude in the examination of a bankrupt, it does not otherwise abrogate the rule as to the examination and cross-examination of witnesses which prevails in the federal courts.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 399–401; Dec. Dig. § 242.*]

In Bankruptcy. In the matter of the Kinnane Company, bankrupt. On application to confirm composition. Denied.

Kramer & Bettman, of Cincinnati, Ohio, for bankrupt.

Watson, Stouffer, Davis & Gearheart, of Columbus, Ohio, Saul S. Myers, of New York City, Simon Fleischmann, of Buffalo, N. Y., and Floyd A. Johnston and Stafford & Arthur, all of Springfield, Ohio, for creditors opposed to confirmation of composition.

Rosenberg, Levis & Ball, of New York City, for creditors favoring confirmation of composition.

SATER, District Judge. After the petition had been filed against the Kinnane Company (hereinafter called the company) asking that it be adjudged a bankrupt, the company, which is engaged in conducting

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a department store, desiring to effect a composition with its creditors, was duly examined as required by law, after which it submitted to its several creditors an offer of 40 per cent. in cash and 5 per cent. in short-time notes. It was the owner of real estate of the value of $100,000, which was incumbered by a mortgage of $65,000, and also by mechanics' liens aggregating several thousand dollars. To obtain a portion of the cash necessary to make the composition and also to possess itself of a working capital, it arranged with certain creditor banks to give them a mortgage on its real estate, subject to the above-mentioned liens, for $46,000. After a majority of the creditors in number and amount had accepted the terms of the proposed composition and before the court was required to confirm or reject it, certain nonassenting creditors interposed objections to its confirmation. The referee was directed to hear the evidence on the objections thus made and to report to the court his recommendation. At the commencement of the hearing before the referee, for reasons satisfactory to itself, the company changed its offer by proposing to give, in addition to the 45 per cent. previously offered, a noninterest-bearing third mortgage on its real estate to a trustee for the benefit of its creditors for the sum of $25,000, if paid within three years, and for $27,000, if paid within five years. The new proposal, except as thus promulgated, was not submitted to the creditors, the number of which is quite large. A majority as to number and amount of indebtedness was represented at the meeting by counsel, who, in so far as they were able so to do, accepted such offer, but apparently not in writing. Such counsel stated that they held powers of attorney from their respective clients. Some of the creditors were not present or represented at the meeting and had no knowledge of the new offer. The objecting creditors still protesting against the composition, the hearing on their objections proceeded. A great volume of evidence was taken and the referee recommended the confirmation of the changed offer; such offer being the only one now before the court for consideration.

That the bankrupt proposes to pay a portion of the sum offered in composition by the execution and delivery of its promissory notes does not invalidate the composition. Loveland, Bankr. (4th Ed.) 1264, 1265.

[1] The consideration tendered by a bankrupt should be substantially equivalent to what his estate would pay, were it fully administered in bankruptcy. In deciding whether the composition should be approved or rejected, the sum offered should be compared with what the creditors would receive through the trustee, and not with what the debtor might be able to pay them. In the absence of fraud and concealment, the question for the court is not whether the debtor might have offered more, but whether his estate will pay more in bankruptcy. The contention that the estate will pay more will not avail, unless that fact is established by the objecting creditors. Loveland, Bankr. 1263, 1264; Adler v. Jones, 109 Fed. 967, 48 C. C. A. 761 (C. C. A. 6); Re Whipple, Fed. Cas. No. 17,513; Re Welles, Fed. Cas. No. 17,377; Black, Bankr. § 653; Collier, Bankr. (10th Ed.) 293, 294.

[2] When a composition is proposed, all the creditors must have no-

tice of the proposal, whether they have proved their claims at the time of the offer or not; the composition must be offered and sufficiently explained to all alike and they must have reasonable opportunity to consider it. They must be fully and honestly advised of the true condition of the debtor's affairs, so they can act intelligently and understandingly, in view of the facts and with a knowledge of their rights in the premises. Unless these conditions were met by the company, the composition must fail, for the provisions of the Bankruptcy Act prescribing the requisites of a composition are to be strictly construed as against those who seek by such means to deprive dissenting creditors of their right to have the debtor's property administered and distributed in the ordinary course of bankruptcy proceedings. Black, Bankr. § 649; Re Greenebaum, Fed. Cas. No. 5,769; Re Keiler, Fed. Cas. No. 7,648; Re Rider (D. C.) 96 Fed. 808; Adler v. Jones, supra.

Under the Bankruptcy Act of 1867 (14 Stat. 517, c. 176), as amended in 1874 (18 Stat. 178, c. 390), a composition once agreed upon could be varied or added to, but a proceeding similar to that resulting from the first offer of composition was necessary. Collier, Bankr. (10th Ed.) 287. Re Reiman, Fed. Cas. No. 11,673, affords an illustration in which the court, on account of a defect in the composition proceedings, permitted a resubmission of the offer to the creditors for their action. In Re Whipple, Fed. Cas. No. 17,513, the composition was refused because the proposal was insufficient; but subsequently the debtor was permitted to make a better offer, which was accepted, although the practice was against the second offer, unless good reason was shown therefor. See, also, Loveland, Bankr. p. 1259, and Re Haskell, Fed. Cas. No. 6,192.

[3] In the instant case, a proposed composition, clear in its provisions, was submitted by the company and accepted by a majority of its creditors in number and amount. But it is the company's changed offer concerning which the evidence was taken and which the court is asked to confirm. There is no provision in the present Bankruptcy Act relating to amended or substituted offers of composition, nor have I been able to find, nor has my attention been directed to, any case arising under such act which presents a situation akin to that under consideration. Counsel for assenting creditors stated in argument that the creditors who accepted the original offer accepted through such counsel the new or amended offer; but there is not before me the written acceptance of any of such creditors, or any of the powers of attorney under which counsel claimed to have acted, nor has the proposition now made ever been submitted to any or all of the creditors in the manner imposed by statute when an original proposition of composition is made. It is not claimed that creditors who were not present at the hearing in person or by counsel had knowledge of the new offer. Two statements of the company's assets and liabilities were, moreover, sent to creditors. The first was based on the representations of the company's manager. It was deceptive in that it exaggerated the assets. He either did not know, or else incorrectly gave, the condition of the company's affairs. He may have been misled somewhat by the company's inaccurately kept books and the information given

him by the bookkeeper; but he must have known, it would seem, that the assets were exaggerated. The later statement issued by the creditors' committee on July 8th was also misleading in that it minimized the assets. The merchandise at that time must have been worth more than the represented value of $48,000, which was in fact the estimate of what it would bring at auction sale. Its market value was not given. There was also an equity of value in the real estate over and above the mortgage and the mechanics' liens; but this later statement recited that it was doubtful whether there was any such equity. Each creditor that proved his claim became a party to the bankruptcy proceeding with all that that condition implies. Collier, Bankr. 749. In view of the rule announced in the Rider Case, supra, the rights of dissenting creditors and in fact of all the creditors ought to be and are as high as those of a defendant in an action at law or in equity who is confronted with an amended pleading. An amended pleading is a new pleading, superseding the original. An amendment to a petition or an amended bill authorizes the defendant to answer and to put in an entirely new defense, even if it be contradictory to his former answer, and he may plead, answer, or otherwise proceed as in case of an original petition or bill, no matter what may have been the state of the pleadings before the amendment was made. 1 Ency. Pl. & Pr. 490, 491. The amended offer was a new offer, and, like an amended pleading, superseded that first tendered. It is for each creditor to say for himself, in the light of all the facts which had developed at the time the new offer was made, whether he would accept it or not. It is not within the province of the court to determine that question for him. The new proposition of composition should have been submitted to the several creditors in the orderly manner prescribed by law. The court may not assume that the requisite number of creditors, representing the requisite statutory indebtedness, would have accepted the new offer. They might have done so, or they might, perchance, on learning of the misleading character of both statements submitted to them regarding the company's assets, have concluded that they had not been fairly treated; that they did not wish to continue the business relations which the acceptance of notes and a mortgage implies; that in view of the company's present difficulties, following so closely after the adjustment made by it about two years ago with its then existing creditors, it had not conducted and will not conduct its business wisely; and that the speedy termination which the Bankruptcy Act permits of all relations with the company was preferable.

[4] The proposition originally made having heretofore been superseded and the one now before the court never having been properly submitted, the court is without power to confirm it; but as the defect in the proceedings pertains to the submission only, and as a majority in number, representing the greater part of the company's indebtedness, is apparently willing to accept the new offer, there is seemingly no valid reason why the bankrupt, if it so desires, may not yet submit to the creditors such terms of composition as it may deem proper to make. A further reason for rejecting the proposed composition is that the true status of the company's affairs has not been exhibited to the creditors. On account of the conflict in evidence as to the value of the company's

assets, the court will appoint appraisers of its own selection to make an inventory and appraisement of all of the company's property and effects, a summary of which must be laid before each and every creditor along with the offer of composition, if one be made.

[5] The record is needlessly voluminous. Inquiry was conducted in different instances as to irrelevant and uncontroverted matters. Although the Bankruptcy Act gives latitude in the examination of the bankrupt, it does not otherwise abrogate the orderly method of procedure in the examination and cross-examination of witnesses which prevails in the federal courts. Cross-examination, as in the case of Bettman, went far beyond anything suggested in his direct examination. It should have been conducted as directed by General Order No. 22 (89 Fed. x, 32 C. C. A. xxv), in conformity with the mode existing in courts of law. The rule as stated in Montgomery v. Ætna Life Ins. Co., 97 Fed. 913, 38 C. C. A. 553 (C. C. A. 6), and McKnight v. U. S., 122 Fed. 926, 928, 61 C. C. A. 112 (C. C. A. 6), is still in force as regards the examination of the usual witness. Counsel should have refrained from, and the referee should have warned against, improper procedure and the needless incumbering of the record, although the referee could not, it seems, exclude the evidence elicited. Loveland, Bankr. 1163. Thirty per cent. of the costs incurred in the hearing will be paid by the objectors.

The proposed composition is rejected and an order may be taken accordingly.