O'HARA v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. May 4, 1904.)

No. 1,265.

1. USE OF MAILS—SCHEME TO DEFRAUD—INDICTMENT.
In a prosecution for using the mails in furtherance of a scheme to defraud, in violation of Rev. St. § 5480, as amended by Act March 2, 1889, c. 393, 25 Stat. 873 [U. S. Comp. St. 1901, p. 3696], it is sufficient to charge that the defendants, having devised or intending to devise a scheme to defraud, to be executed by the use of the mails, did, in the execution of such fraudulent scheme, deposit for transmission a letter in some post office.

2. SAME—TIME.
Where an indictment charged that on May 21, 1902, defendants devised a scheme to defraud, described in detail, and in conclusion alleged that defendants did then and there, in the execution of such scheme, place in the mails at C. a letter, a copy of which was set out, which letter was dated on May 21, 1902, and addressed to H., one of the persons it was averred the scheme was devised to defraud, was sufficiently definite as to time, though there was an averment in the body of the indictment that defendants intended to obtain from H. and others, between January 1, 1902, and May 23, 1902, large sums of money, etc., since such allegation, being nonessential, might be rejected as surplusage.

3. SAME—EXECUTION OF SCHEME—IMPOSSIBILITY.
In a prosecution for using the mails with intent to defraud, in furtherance of a scheme devised by defendant, as an alleged turf commissioner, to pay large returns for money to be used in betting on horse races, the fact that the scheme was impossible of execution on its face was immaterial.

4. SAME—GAMBLING TRANSACTION—ILLEGALITY.
In a prosecution for using the mails in furtherance of a scheme to defraud by the paying of large returns for money to be used in betting on horse races, the fact that such scheme involved a gambling transac-

---

¶ 4. Nonmailable matter in furtherance of fraud, see note to Timmons v. United States, 30 C. C. A. 86.

tion forbidden by the laws of the state where it was devised and where defendants resided was immaterial.

5. SAME—CRIMINAL LAW—WITNESSES—NUMBER—LIMITATION.

Under Rev. St. § 878 [U. S. Comp. St. 1901, p. 668], authorizing the court in a criminal case to direct witnesses to be subpœnaed for defendant at the government's expense under certain circumstances, it was within the discretion of the trial court to limit the number of defendant's witnesses to be so subpœnaed to four on each particular point named in defendant's præcipe.

6. SAME—ARRAIGNMENT—PLEA.

Where defendant was arraigned and pleaded "not guilty," but thereafter obtained leave to withdraw his plea and file a motion to quash the indictment and a demurrer thereto, which was thereafter overruled, whereupon he went to trial, the withdrawal of the plea of not guilty was provisional only, and it was not material that a plea of "not guilty" should be again entered of record.

7. SAME—VARIANCE.

In a prosecution for using the mails in the furtherance of a scheme to defraud, alleged to have been devised on May 21, 1901, evidence of similar transactions occurring prior to such date was properly admitted as showing the nature of the scheme in which defendant was engaged in executing when he mailed the letter to the person specified in the indictment.

8. SAME—EVIDENCE.

In a prosecution for using the mails with intent to defraud, loose sheets of paper containing figures with reference to defendant's business, which he could not identify or explain, not appearing to be either original records or copies thereof, were properly excluded.

In Error to the District Court of the United States for the Southern District of Ohio.

The plaintiff in error was indicted and convicted of violating section 5480 of the Revised Statutes of the United States, as amended by Act March 2, 1889, c. 393, 25 Stat. 873 [U. S. Comp. St. 1901, p. 3696], which reads as follows: "If any person having devised or intending to devise any scheme or artifice to defraud * * * to be effected by either opening or intending to open correspondence or communication with any person, whether resident within or outside the United States, by means of the post office establishment of the United States, or by inciting such other person or any person to open communication with the person so devising or intending, shall, in and for executing such scheme or artifice, or attempting so to do, place or cause to be placed, any letter, packet, writing, circular, pamphlet, or advertisement in any postoffice * * * such person so misusing the postoffice establishment shall upon conviction, be punishable," etc.

The indictment was in three counts. The first count charged:

"That W. W. O'Hara and Thomas H. Walker, * * * on, to wit, the twenty-first day of May, in the year of our Lord one thousand nine hundred and two, in the county of Hamilton, in the state of Ohio, in the Circuit and Western Division of the District aforesaid, and within the jurisdiction of this court, did then and there unlawfully, knowingly, and fraudulently devise a scheme and artifice to defraud Henry Hildebrant, P. B. Middleton, Harry O. Thompson, and various other persons to these grand jurors unknown, which said scheme and artifice to defraud was to be effected by opening and intending to open correspondence with said Henry Hildebrant, P. B. Middleton, Harry O. Thompson, and said various other persons to these grand jurors unknown, by means of the post-office establishment of the United States, which said misuse of the post-office establishment of the United States was then and there a part of said scheme and artifice to defraud, which said scheme and artifice to defraud was in substance as follows, to wit:

"That they, the said W. W. O'Hara and Thomas H. Walker, * * * intended to falsify, pretend, and state, in and through certain circulars and

letters sent and delivered through the post-office establishment of the United States as aforesaid, that the said W. W. O'Hara, who had offices in the Union Trust Building, Cincinnati, Ohio, was a 'turf commissioner,' and had expert professional handicappers operating in connection with his commission house, and that by reason of his experience and knowledge in the race-horse world, and his system of placing bets upon the various races that were being conducted throughout the United States, all risk of loss was practically eliminated, and, by reason of the manner in which he was to conduct the business of 'turf commissioner' as aforesaid, he would · be able to earn for his customers the large dividends and profits that he was from week to week to give to the investors who intrusted their money in his hands; that, with the money received from his numerous customers and investors in the United States, pools would be formed the first of every week; that twenty-five per cent. of the winnings was to be deducted for the services of the commissioner, and the net earnings of each week were to be sent to his customers as aforesaid; that never more than twenty-five per cent. of the money sent by each customer was to be hazarded upon any race at any one time, and that the principal of the investors or customers was always to be kept intact and returned to the said investors or customers upon demand, and that the dividends to be paid and promised to be paid were always to be paid from earnings or profits derived from winnings upon the races or bets made upon race horses.

"The grand jurors further present that said W. W. O'Hara and Thomas H. Walker * * * intended to obtain from said Henry Hildebrant, P. B. Middleton, Harry O. Thompson, and the various other persons to these grand jurors unknown, between the dates of January 1, 1902, and May 23, 1902, large sums of money, to wit, more than $200,000, on the representation that they would use the same in betting upon races or upon race horses.

"In truth and in fact, however, the grand jurors aver that said W. W. O'Hara and Thomas H. Walker * * * did not intend to use the money so received from the said Henry Hildebrant, P. B. Middleton, Harry O. Thompson, and said various other persons to these grand jurors unknown, in betting upon races or upon race horses; that they did not intend to have in their employ professional handicappers, or persons experienced in the racing business; that they did not intend to invest the money so received as they represented as aforesaid, to wit, in betting upon races or upon race horses; but the said W. W. O'Hara and Thomas H. Walker * * * did intend to pay out each week to their customers, or persons who had intrusted money to them to be invested in their pretended scheme as aforesaid, a portion of said large sum of money (the amount is to these grand jurors unknown), which they were to pretend and state were the net profits or earnings of the money received and invested in their pretended scheme as aforesaid, and were to appropriate and convert to their own use a large amount of the money received from the victims of said scheme, the exact amount being unknown to these grand jurors; and at no time after the receipt of the money from Henry Hildebrant, P. B. Middleton, Harry O. Thompson, and said various other persons to these grand jurors unknown, was the principal to be received from these parties, as aforesaid, to be kept intact, so that it could be returned to them upon demand, as they were to promise they would do.

"And the grand jurors aforesaid, upon their oaths and affirmations, do further present that said Henry Hildebrant, P. B. Middleton, Harry O. Thompson, and said various other persons to these grand jurors unknown, by reason of the false and fraudulent acts as aforesaid, and in the use of the mails as aforesaid, were to be defrauded out of the money placed in the hands of the said W. W. O'Hara, Thomas H. Walker, in large sums, to wit, · to the amount of more than $200,000.

"And the grand jurors aforesaid, upon their oaths and affirmations, do further present that said W. W. O'Hara and Thomas H. Walker * * * did carry out said scheme to defraud above outlined, thereby defrauding said various persons out of large sums of money, and did unlawfully, wrongfully, and willfully, then and there, in further execution of said scheme and artifice to defraud, and in the misuse of the post-office establishment of the Unit-

ed States as aforesaid, place and cause to be placed in the post office at Cincinnati, for mailing and delivery, a letter addressed to Henry Hildebrant, Washington C. H. O., which said letter was in the words and figures following, to wit:

" 'Office of W. W. O'Hara, Turf Commissioner, Union Trust Building,
               Fourth and Walnut Streets.
                                        " 'Cincinnati, O., May 21, 1902.

" 'Mr. Henry Hildebrant, Wash. C. H. O.: The dividend for week ending May 17, 1902, is $3.00 on each $100. Enclosed find money order for $9.00, less exchange on your investment of $300.

" 'Respectfully, W. W. O'Hara.'

—Contrary to the form of the statute in such cause made and provided, and against the peace and dignity of the United States of America."

The second and third counts describe the scheme to defraud in similar language, but the second charges that the scheme was devised on May 19, 1902, and on that day, to carry it out, a letter (which is set out in full) was mailed to P. B. Middleton; while the third charges that the scheme was devised May 21, 1902, and on that day, to carry it out, a letter (which is set out in full) was mailed to Harry O. Thompson. There was a general verdict of guilty. Motions in arrest of judgment and for a new trial having been overruled, the plaintiff in error was sentenced to imprisonment in the penitentiary. There are 96 assignments of error.

Shay & Cogan and Thos. H. Darby, for plaintiff in error.

Sherman T. McPherson, U. S. Atty., and Edward P. Moulinier, Asst. U. S. Atty.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

1. By the motion to quash and a demurrer, a number of objections were made to the indictment: That it is indefinite and repugnant in its averments as to time; that it does not charge the offense directly, but only by intendment and argumentation; that the scheme to defraud was one impossible of performance, and therefore not within the contemplation of the law; and that the things the defendants pretended they would do were forbidden by the laws of Ohio, and therefore the defendants cannot be punished for not doing them. The form of the indictment might have been improved, but a defect in matter of form only is immaterial. Rev. St. § 1025 [U. S. Comp. St. 1901, p. 720]. As Mr. Justice Brown said:

"While the rules of criminal pleading require that the accused shall be fully apprised of the charge made against him, it should, after all, be borne in mind that the object of criminal proceedings is to convict the guilty, as well as to shield the innocent, and no impracticable standards of particularity should be set up whereby the government may be entrapped into making allegations which it would be impossible to prove." Evans v. U. S., 153 U. S. 584, 590, 14 Sup. Ct. 934, 38 L. Ed. 830.

It is sufficient, under section 5480 [U. S. Comp. St. 1901, p. 3696], to charge that the defendants, having devised or intending to devise a scheme to defraud, to be effected by the use of the mails, did, in the execution of this fraudulent scheme, deposit for transmission a letter in some post office. The offense is the misuse of the mails—the deposit of a letter in the execution of a scheme to defraud. Weeber

v. U. S. (C. C.) 62 Fed. 740; Durland v. U. S., 161 U. S. 306, 315, 16 Sup. Ct. 508, 40 L. Ed. 709.

In the first count it is charged that the defendants, on May 21, 1902, devised a scheme to defraud. This scheme is described in detail, and in conclusion it is alleged that the defendants did "then and there," in execution of this scheme, place in the mails at Cincinnati a letter, a copy of which is given. The letter is dated May 21, 1902, and addressed to Hildebrant, one of the persons it is averred the scheme was devised to defraud. It is clear the pleader intended to charge that the scheme was devised on the day the letter was dated and mailed. In the body of the indictment there is the averment that the defendants intended to obtain from Hildebrant and others, between January 1, 1902, and May 23, 1902, large sums of money, namely, more than $200,000, on the representation that they would use it in betting upon horse races. The claim is that this paragraph vitiates the indictment for repugnancy, because the scheme devised on May 21, 1902, could not be carried into execution between January 1, 1902, and May 23, 1902. But this paragraph is not connected by averment with the scheme to defraud described in detail. It stands alone, is inessential, and may be rejected as surplusage. Lehman v. U. S. (C. C. A.) 127 Fed. 41, 45. Doubtless the pleader, although aware that the defendants had been operating the scheme from January, hesitated to charge that they devised the scheme in January for the purpose of defrauding Hildebrant, whom at that time they did not know and could not have in mind. Out of abundance of caution, he charged that the scheme to defraud Hildebrant was devised the day they wrote and mailed him the letter.

There is no merit in the objection that the indictment does not charge the offense in positive terms. The intention to make false and fraudulent representations by means of circulars and letters transmitted through the mails, and thus obtain money from the credulous, constituted the scheme itself.

The objection that on its face the scheme was impossible of execution, and therefore should have deceived no one, is without merit. Weeber v. U. S. (C. C.) 62 Fed. 741. Schemes to defraud depend for success not on what men can do, but upon what they may be made to believe, and the credulity of mankind remains yet unmeasured.

Finally, it is urged the scheme involved a gambling transaction forbidden by the laws of Ohio, and that the defendants ought not to be prosecuted for not carrying it out. It is not charged that the race tracks were in Ohio, and it is not clear that the betting had to be done in Ohio. But, however this may be, the defendants were not prosecuted for failing to bet on races, but for using the mails in executing a scheme to despoil the public. The betting was but a pretense. If they had bet the money, they would be in no better plight, for they could not have bet it so as to enable them to redeem their promises. They knew this from the start.

2. It is claimed that the trial court erred in limiting the number of the defendant's witnesses to be subpœnaed at the government's expense to four upon each particular point named in the defendant's præcipe. This was within the discretion of the court, under section

878, Rev. St. U. S. [U. S. Comp. St. 1901, p. 668], and violated no fundamental ·right under the Constitution. Crumpton v. U. S., 138 U. S. 361, 364, 11 Sup. Ct. 355, 34 L. Ed. 958; U. S. v. Van Duzee, 140 U. S. 173, 177, 11 Sup. Ct. 758, 35 L. Ed. 399; Goldsby v. U. S., 160 U. S. 70, 73, 16 Sup. Ct. 216, 40 L. Ed. 343.

3. The record shows that the defendant was arraigned and pleaded "not guilty," but afterwards, on leave granted, he withdrew this plea to file the motion to quash and the demurrer. They being overruled, he went to trial, the record not showing whether he again pleaded "not guilty." An Ohio case (Hanson v. State, 43 Ohio St. 376, 1 N. E. 136) is relied on as holding that a record is fatally defective which does not show an arraignment on the indictment before trial. But this record does show such an arraignment. He did plead "not guilty." That plea was only withdrawn for the purpose of filing the motion and demurrer. The order shows that it was not finally withdrawn, but only formally for the special purpose. These having been overruled, he was remitted to his plea of "not guilty." Nothing was left except to plead "guilty" or go to trial. Naturally, he did the latter.

4. Eight witnesses were permitted, over the objection of the defendant, to testify to transactions with him prior to May 21, 1902, when it was alleged the scheme was devised. It is urged a variance is shown because these persons were not named in the indictment; and, besides, that their testimony should have been excluded. The record does not show that the question of variance was presented to the court below. If they had been entrapped before May 21, 1902, evidently the scheme devised on that day was not intended for them, and the grand jury could not properly have included their names as persons whom the scheme of May 21, 1902, was devised to defraud. Their testimony was objected to on the ground that it was not responsive to the allegations of the indictment, and it was admitted because it was introduced and tended to prove the fraudulent character of the scheme which the defendant was operating. The court rightly refused to limit the government to the precise time when the indictment averred the scheme was devised to defraud the person to whom the letter was mailed. A like scheme had been in operation for months. The scheme charged in the indictment was but a continuation of this. It was entirely proper to introduce evidence of its character as reflecting upon the nature of the scheme the defendant was engaged in executing when he mailed the letter in question.

5. The court refused to permit the defense to introduce in evidence a number of loose sheets of paper, containing figures about horse races, which the defendant, who was on the stand, could not identify or explain. These papers did not appear to be original records, or copies of original records, and they were rejected on this ground. We think the court was right in excluding them. They were not properly connected with O'Hara's transactions in carrying out the scheme under consideration. In no way were they identified as records or copies of records of his transactions.

These are the only assignments of error which, in our opinion, merit consideration.

The judgment is affirmed