FOSTER et al. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. April 5. 1910.)

No. 1,997.

1. POST OFFICE (§ 48*)—OFFENSES—COUNTS IN INDICTMENT—REPETITION OF MATTER.

An indictment for using the mails in furtherance of a scheme to defraud set out in the first count a description of the scheme, with an allegation that defendants devised it, and in the second and third counts, instead of repeating such allegation, charged that defendants, "in and for executing the scheme and artifice to defraud set out in the first count of this indictment, which statement is hereby made a part of this second count of this indictment, and in attempting so to do," etc. *Held*, that the latter counts were not objectionable for failure to charge that defendants actually devised the scheme, on the theory that the word "statement" related only to the description of the scheme.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 72; Dec. Dig. § 48.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. POST OFFICE (§ 35*)—MISUSE OF MAILS—SCHEME TO DEFRAUD—ELEMENTS OF OFFENSE.

In order to constitute the offense of using the post office in furtherance of a scheme to defraud, the government must prove that the defendants devised a scheme or artifice to defraud, that they intended to effect the scheme through the use of the post office establishment, and that in carrying out the scheme they either deposited a letter or packet in the post office or took or received one therefrom.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. § 35.*

Nonmailable matter, see note to Timmons v. United States, 30 C. C. A. 79.]

3. INDICTMENT AND INFORMATION (§ 60*)—REQUISITES.

An indictment is fatally defective, if an essential element of the crime intended to be charged is omitted.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 182; Dec. Dig. § 60.*]

4. INDICTMENT AND INFORMATION (§ 99*)—COUNTS.

Where an indictment consists of several counts, it is not necessary to set out in full in each count matter contained in a previous count to avoid unnecessary repetition, and if a previous count be defective, or is rejected, that will not vitiate the remaining counts, if the reference be sufficiently full to incorporate the matter going before with that in the count in which the reference is made.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 270, 270½; Dec. Dig. § 99.*]

5. POST OFFICE (§ 48*)—SCHEME TO DEFRAUD—INDICTMENT.

Though an indictment for using the post office in furtherance of a scheme to defraud must describe the alleged scheme with such certainty as to clearly inform the defendants of the charge made against them, an indictment is sufficient if it states such elements with sufficient certainty to enable the defendants to prepare their defense.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 72; Dec. Dig. § 48.*]

6. POST OFFICE (§ 35*)—MISUSE OF MAILS—SCHEME TO DEFRAUD—STATUTES.

Rev. St. § 5480 (U. S. Comp. St. 1901, p. 3696), prohibiting the use of the post office in furtherance of a scheme to defraud, includes every scheme to be effected by the use of the post office establishment which is in fact designed to defraud, by representations as to the past or present, or suggestions and promises as to the future; it being immaterial that the business or scheme conducted is an actual business, provided it is the basis of a fraudulent scheme.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. § 35.*]

7. POST OFFICE (§ 50*)—MISUSE OF MAILS—FRAUDULENT SCHEME—QUESTION FOR JURY.

In a prosecution for using the post office establishment in furtherance of a scheme to defraud, consisting of defendants' operation of a bucket shop, advertised through the mail to be a legitimate brokerage business, evidence *held* to justify an inference that the scheme was fraudulent in its inception and execution, and that the advertising matter sent through the mail was calculated to further defendants' scheme to despoil the public.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 87–89; Dec. Dig. § 50.*]

8. POST OFFICE (§ 35*)—SCHEME TO DEFRAUD—FRAUD IN FACT.

In a prosecution for using the post office establishment in furtherance of a scheme to defraud, it is not necessary to show that any one has been in fact defrauded, nor is it necessarily conclusive against the fraudulent

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nature of the scheme that those named in the indictment as among those intended to be defrauded have not been so defrauded in fact.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. § 35.*]

9. POST OFFICE (§ 49*)—SCHEME TO DEFRAUD—EVIDENCE.

In a prosecution for using the post office establishment in furtherance of a scheme to defraud, by the use of the business of a brokerage company, evidence *held* insufficient to sustain a conviction of one of the defendants, who was not shown to have participated in the actual management of the business of the company, nor to have had knowledge of the alleged fraudulent schemes and practices of those engaged in its management.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 86; Dec. Dig. § 49.*]

10. CRIMINAL LAW (§ 1055*)—APPEAL AND ERROR—REVIEW—NECESSITY FOR EXCEPTION.

Defendant was not entitled to object on appeal to the action of the district attorney in attempting to procure the production of certain books, in the absence of an exception thereto.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2666; Dec. Dig. § 1055.*]

11. CRIMINAL LAW (§ 1059*)—PROCEEDINGS AT TRIAL—EXCEPTION.

The district attorney, in criminal proceedings, seeking to procure the production of certain books in the hands of a receiver, stated that two of the attorneys representing the defendants were also counsel for the receiver, and asked if "the gentlemen" (referring to the receiver's counsel) would permit a man to go to the receiver's office to bring the books to the courtroom, to which defendants' counsel retorted, "No, sir." *Held*, that such colloquy could not be regarded as an exception, authorizing a review of the conduct of the district attorney claimed to be prejudicial to defendants.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2671; Dec. Dig. § 1059.*]

12. CRIMINAL LAW (§ 444*)—EVIDENCE—BOOKS OF ACCOUNT—IDENTITY.

Where the attorney for a receiver, in whose possession were certain books of account of a brokerage company, testified that the government's accountant was furnished room in the office of the attorney in which to examine the books, and that he did so, and a list of the books examined, which were so marked as to indicate that they were the books of the brokerage company, was given, and in some cases the dates covering the transactions referred to, the books containing also inherent evidence of authenticity, the identity of the books was prima facie established.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1028; Dec. Dig. § 444.*]

13. CRIMINAL LAW (§ 402*)—EVIDENCE—BEST AND SECONDARY EVIDENCE—BOOKS OF ACCOUNT.

Where the government had issued a subpoena for the production of certain books in the hands of the state court's receiver, who failed to produce the books, and the state court in proceedings therefor refused to authorize their production, proof of such facts constituted a sufficient foundation for the introduction of secondary evidence of their contents.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 887–888; Dec. Dig. § 402.*]

14. CRIMINAL LAW (§ 1036*) — WRIT OF ERROR — REVIEW — QUESTIONS NOT RAISED AT TRIAL.

An objection to evidence, not presented in the trial court, will not be reviewed on writ of error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2639–2641; Dec. Dig. § 1036.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**15. Criminal Law (§ 444\*)—Books of Account—Authentication.**

The books of a party are admissible on behalf of the opposite party when in the nature of admissions, without the necessity of strict authentication beyond establishing the identity of the books.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1028; Dec. Dig. § 444.\*]

**16. Criminal Law (§ 434\*)—Evidence—Books of Corporation—Evidence Against Manager.**

Entries in the books of a corporation, showing dealings between it and its managers, are competent against them in a criminal prosecution, on proof of such connection and familiarity with the books as to justify an inference of actual acquaintance with their contents, as admissions or assertions of the facts stated therein.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1023; Dec. Dig. § 434.\*]

**17. Post Office (§ 48\*)—Scheme to Defraud—Evidence.**

In a prosecution for using the post office establishment in furtherance of a scheme to defraud in the conduct of a bucket shop in the name of the "O. Brokerage Company" and "F. & Co.," represented to be legitimate brokerage concerns, evidence that neither the brokerage company nor F. & Co. were members of the New York Stock Exchange or the Chicago Board of Trade was admissible, though there was no express allegation thereof in the indictment.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 72; Dec. Dig. § 48.\*]

**18. Criminal Law (§ 1170½\*)—Witnesses—Recollection—Refreshment—Prejudice.**

Defendant was not prejudiced by the government's use of a witness' former statement to refresh his recollection, where it was ineffective for that purpose, and the statement was not given to the jury.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3129–3135; Dec. Dig. § 1170½.\*]

**19. Criminal Law (§ 824\*) — Evidence — Limitation — Instructions — Requests.**

Where evidence was received only as against one defendant, the court's failure to so limit the evidence in its instructions, in the absence of a request therefor, was not error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1999; Dec. Dig. § 824.\*]

**20. Witnesses (§ 269\*)—Cross-Examination—Scope.**

A party has no right to cross-examine a witness in a trial in the federal courts, whether civil or criminal, without leave of court, as to any fact or circumstance not connected with matters stated in his direct examination.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 949; Dec. Dig. § 269.\*]

**21. Post Office (§ 48\*)—Scheme to Defraud—Evidence.**

In a prosecution for using the post office in furtherance of a scheme to defraud by means of the O. Brokerage Company and F. & Co., held out as legitimate brokerage concerns, when in fact they were mere bucket shops, a paper prepared for distribution, though not sent out, giving notice that two of the defendants had retired from the brokerage company and had turned over the business to their employés, with its entire capitalization of $250,000, fortifying them with a surplus of $500,000 additional, and soliciting for them the continued patronage of the old firm's customers, was admissible, though not covered by any allegation in the indictment, on proof that defendants knew of the preparation of the statement, and

---

\*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that it was prepared to be sent out in furtherance of the alleged scheme to defraud.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 72; Dec. Dig. § 48.*]

In Error to the District Court of the United States for the Southern District of Ohio.

Louis W. Foster and others were convicted of using the United States mails in furtherance of a scheme to defraud and they bring error. Affirmed, except as to defendant John M. Gorman, and reversed and new trial ordered as to him.

The defendants were jointly indicted under section 5480 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3696), which provides that "if any person having devised or intending to devise any scheme or artifice to defraud * * * to be effected by either opening or intending to open correspondence or communication with any person * * * by means of the post office establishment of the United States * * * shall, in and for executing such scheme or artifice, or attempting so to do, place or cause to be placed, any letter, packet, writing * * * in any post office * * * of the United States, to be sent or delivered by the said post office establishment * * * shall, upon conviction, be punishable," etc. The indictment contained three counts. In the first count the alleged scheme to defraud was set out with considerable particularity. In substance the count charges that the defendants intended to and did do business at Cincinnati, Ohio, in the name of the O'Dell Brokerage Company, a corporation, and in the name of Foster & Co.; that they intended to defraud persons specifically named in the indictment, and others unnamed, who were desirous of buying and selling stocks and provisions on margins, by soliciting and securing such persons as customers, through advertisements, circulars, and letters; also by representing that Foster & Co. were engaged in doing business as brokers and dealers in stocks and provisions for present and future delivery; also by sending and causing to be sent by mail to the persons intended to be defrauded a so-called "Review and Forecast," intended to give information and advice to prospective purchasers of stocks, grain, etc. It is also alleged that defendants intended to represent and did represent, by the use of said "Review and Forecast," that Foster & Co. were lawfully, honestly, and in good faith doing business in buying and selling stocks and provisions, and that they would purchase and sell on margins, for present or future delivery, stocks and provisions, according to the quotations of the New York Stock Exchange and the Chicago Board of Trade; further, that defendants intended to send by mail to their customers a so-called "Daily Statement," which was intended to and did show the state of the pretended trades with the persons intended to be defrauded; that for the purpose of securing customers defendants intended to represent, by the "Daily Statement" and otherwise, that Foster & Co. solicited and received orders to buy and sell stocks and provisions upon margins for present or future delivery, and that defendants were to charge and collect a pretended carrying charge on grain and a commission for buying and selling stocks, but that defendants in fact intended to falsely and fraudulently appropriate to their own use the money and collateral sent to them for use as margins on such pretended sales, without rendering anything of service or of value in return; that the defendants intended to and did represent in the daily statement mentioned that they had made and would make purchases and sales of stocks, grain, etc., in the various exchanges named in accordance with the actual market quotations on such exchanges at the time of receiving orders therefor, but that as a matter of fact they intended to and did report to the persons so intended to be defrauded false and fictitious quotations and prices on such stock, grain, etc., and intended to and did convert to their own use the difference between the actual market prices of the stocks, grain, etc., as quoted on the exchanges and received by them and the fictitious and fraudulent quotations and prices which they intended to and did represent and ac-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cording to which fraudulent quotations and prices the so-called trades were closed and settled, sending the same by mail to the persons intended to be defrauded. The scheme was alleged to be false and fraudulent in these particulars: That defendants were not lawfully and in good faith doing a brokerage business for present and future delivery; that they did not receive, execute, and carry out, nor intend so to do, orders for the purchase and sale of stocks, grain, etc., on margins for present or future delivery according to the quotations of said exchanges; that defendants received orders to buy and sell such stocks, grain, etc., on margins with no intention of making actual delivery of the property, and made no actual margin trades, but made the trades for themselves, and instead of in good faith collecting for the persons to be defrauded the commissions for the purchase and sale of stocks, grain, etc., intended to obtain possession of such charges, commissions, and other moneys, and convert the same to their own use, without rendering anything of service or value therefor. In the second and third counts the alleged scheme to defraud was not set out, each of those counts merely alleging that the defendants "in and for executing the scheme and artifice to defraud set out in the first count of this indictment, which statement is hereby made a part of this second count of this indictment, and in attempting so to do, did unlawfully and knowingly place and cause to be placed in a post office of the United States, to wit, the post office at Cincinnati, Hamilton county, Ohio, to be sent and delivered by the post office establishment of the United States, to the addressee thereof, a certain letter, writing, and packet" particularly described.

Each defendant separately moved to quash the indictment. The motion was granted as to the first count, for the reason that the count failed, in the opinion of the court, to charge that the letter therein named was deposited for the purpose of executing the alleged fraudulent scheme and device. The motions to quash as to the second and third counts were overruled, and the case proceeded to trial. At the conclusion of the government's case the defendants moved for the direction of an acquittal, upon the ground that the evidence failed to support the charge made in the indictment. The motion was overruled, the defendants offered no testimony, and the case was submitted to the jury. The defendants were convicted, sentences imposed, and motions for new trial denied.

Miller Outcalt, for plaintiffs in error.
E. P. Moulinier, for the United States.

Before SEVERENS, WARRINGTON, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge (after stating the facts as above). The proposition which first claims attention is that the second and third counts should have been squashed as fatally defective. The specific criticism is that the language, "in and for executing the scheme and artifice to defraud set out in the first count [of the indictment], which statement is hereby made a part of this second count of this indictment," is insufficient to incorporate into the subsequent counts the allegation that the defendants actually devised the scheme to defraud set out in the first count; the argument being that the word "statement" relates only to the description of the scheme with the first count alleges was devised by the defendants, and does not embrace the allegation contained in the first count, that defendants actually devised that scheme. In our opinion, the criticism is without substantial merit. It is true that the elements of the offense which must be charged in an indictment under the section in question and established in the proof are (1) that the defendants devised a scheme or artifice to defraud; (2) that they intended to effect this scheme through the use of the post office establishment of the United States; and (3) that in carrying

out such scheme the defendants either deposited a letter or packet in the post office, or took or received one therefrom. Stokes v. United States, 157 U. S. 187, 15 Sup. Ct. 617, 39 L. Ed. 667; Horman v. United States, 116 Fed. 350, 53 C. C. A. 570. And the rule is fundamental that no essential element of the crime intended to be charged can be omitted without destroying the whole pleading. United States v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516.

It is not, however, urged, and could not be successfully contended, that it is necessary to set out in full in each count of the indictment matter contained in a previous count. One count in an indictment may properly refer to matter in a previous count, so as to avoid unnecessary repetition; and if a previous count be defective, or is rejected, that circumstance will not vitiate the remaining counts, if the reference be sufficiently full to incorporate the matter going before with that in the count in which the reference is made. Crain v. United States, 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097; Blitz v. United States, 153 U. S. 308, 14 Sup. Ct. 924, 38 L. Ed. 725. We think the definition of the word "statement" contended for by defendants is too narrow. The only scheme to defraud set out in the first count of the indictment is a scheme entered into by the defendants; and that portion of the first count which defendants counsel seem to regard as the "statement" expressly alleges in its opening paragraph, and repeatedly thereafter, that the defendants intended to do the alleged fraudulent acts constituting the scheme in question. Moreover, one cannot be indicted under the statute in question for using the mails in furtherance of a scheme to defraud not devised or participated in by him. In view of these considerations, the defendants could not have failed to understand, from the reference contained in the second and third counts, that they were charged with having devised the scheme set out in the first count, and so could not have been misled. In our opinion the trial judge rightly overruled the motions to quash.

It is urged that the second and third counts of the indictment should have been quashed because, even when taking into consideration the first count, which is incorporated by reference into the second and third counts, the indictment is lacking in sufficient particularity, and so uncertain in averment, and so involved in immaterial and redundant allegations, as to fail to reasonably advise the defendants of the charges they are called upon to meet. It is the unquestioned rule that an indictment must describe the alleged scheme to defraud with such certainty as to clearly inform the defendants of the charge made against them, and thus of the nature of the evidence to be produced in proof of the execution of the scheme. Stewart v. United States, 119 Fed. 89, 94, 55 C. C. A. 641. But an indictment which states the essential elements of the offense with such reasonable particularity as will advise the defendants with reasonable certainty of the nature of the accusation, and thus enable them to prepare their defense, is sufficient. Brown v. United States, 143 Fed. 60, 74 C. C. A. 214. The object of criminal proceedings is to convict the guilty, as well as to shield the innocent, and no impracticable standards of particularity should be set up whereby the government may be entrapped into mak-

ing allegations which it would be impossible to prove. Evans v. United States, 153 U. S. 584, 590, 14 Sup. Ct. 934, 38 L. Ed. 830; O'Hara v. United States, 129 Fed. 551, 554, 64 C. C. A. 81.

Tested by these rules the indictment is not, in our opinion, subject to the criticisms we are considering. The argument that the allegations of fraud are shown to be based on inferences drawn from the trade letterheads of Foster & Co., appearing upon the "Review and Forecast," and upon the "Daily Statement," lacks sufficient foundation. While the publications referred to are made the basis of certain allegations and inferences, the indictment contains otherwise sufficiently direct allegations to apprise the defendants of the nature of the scheme, and that the defendants were charged in the indictment to have intended to falsely represent and induce the belief that the defendants were engaged in a legitimate brokerage business, actually buying and selling on exchange, and to procure money upon such representations and belief, and to appropriate the moneys so obtained not only by their employment in bucket shop transactions, as distinguished from a legitimate business of buying and selling, but also through actual fraud in the conducting of the bucket shop operations.

Presumably in support of the proposition that a verdict of acquittal should have been directed, it is urged that there was no proof that defendants had devised a fraudulent scheme, or that any one was in fact defrauded; that no one testified that he was solicited or induced by defendants' advertisements to do business with defendants; that the conducting of a bucket shop, while forbidden by the Ohio statutes, is not of itself a fraudulent scheme within the federal statute; and that the letters deposited in the mail did not contain fraudulent representations. It is accordingly urged that defendants were convicted merely because they were engaged in a business condemned by the statutes of Ohio, and not because of proofs sufficient to convict them of the crime charged.

It is true that the conducting of a bucket shop is not necessarily a fraudulent scheme within the federal statute in question; but the act under which the defendants are indicted is aimed at every scheme (to be effected by the use of the post office establishment) which is in fact designed to defraud, by representations as to the past or present, or suggestions and promises as to the future. It was enacted to protect the public against all intentional efforts to despoil through the medium of the post office establishment. Durland v. United States, 161 U. S. 306, 16 Sup. Ct. 508, 40 L. Ed. 709. And the fact that the business conducted was an actual business does not prevent its being within the statute, provided it was the basis of a fraudulent scheme. McConkey v. United States, 171 Fed. 829, 96 C. C. A. 501. There was testimony tending to show, and from which the jury had the right to infer, especially in the absence of testimony to the contrary, that the scheme in question was fraudulent in inception and execution; that the advertising matter sent out was calculated to allure the ignorant, the credulous, and the unwary, and to induce a belief that the defendants were carrying on a legitimate brokerage business; that the business as organized was without net capital; that large sums of money were appropriated by the incorporators through the medium of a ficti-

tious bank account; and that so-called orders were in some instances filled at improper quotations, and to the advantage of the proprietors of the business. It was not necessary to show that any one was in fact defrauded, nor was it necessarily conclusive against the fraudulent nature of the scheme that those named in the indictment as among those intended to be defrauded were not in fact so defrauded.

In our opinion, the court was justified in submitting to the jury the questions of fact involved, except as to the defendant Gorman. As to him, while there was testimony warranting the conclusion that he had a substantial proprietary and beneficial interest in the O'Dell Brokerage Company, he is not shown to have participated in the active management of the business of that company; and a careful consideration of the record constrains us to the opinion that there was not presented such evidence that he participated in or had knowledge of the alleged fraudulent schemes and practices of those engaged in the management of the O'Dell Brokerage Company and of Foster & Co. as to warrant submitting to the jury the question of his guilt. Upon the record presented, a verdict of acquittal should have been directed as to him.

It is earnestly urged that prejudicial error was committed upon the trial with respect to and in connection with the admission of evidence of the contents of the books of the O'Dell Brokerage Company. At the time of the trial these books were, and for some time before had been, in the custody of a receiver appointed by the state court. It appeared upon the trial that a subpœna calling for the production of the books had been served upon the receiver, at the instance of the attorney for the government, and that the receiver declined to produce them without authority from the judge of the state court. Two of the attorneys present in court representing the defendants upon the trial, were claimed by counsel for the government to be counsel for the receiver. Thereupon the attorney for the government stated, in the presence of the jury, that if "the gentlemen" (apparently meaning the receiver's counsel) were not willing to produce the books, he wished to make application to the state court for them, later stating that he should ask "the gentlemen" to let some one bring them from the receiver's office to the courtroom, and still later that he had served upon defendants notice of his proposed application to the state court. It appeared later, though not in the presence of the jury, that the judge of the state court did not feel justified in ordering the production of the books without the consent of the defendants, and that the latter objected to such production upon the hearing of the application to the state court. The books were accordingly not produced.

An expert in the employ of the government was permitted to testify as to the contents of the books from knowledge obtained through an examination, made some time previous to the commencement of the trial. It is insisted, first, that defendants' rights were invaded, in violation of the fifth amendment to the federal Constitution, which provides that no person shall be compelled, in any criminal case, to be a witness against himself; and, second, that secondary evidence of the contents of the books was given without the proper foundation being laid therefor. In McKnight v. United States, 115 Fed. 972, 54 C. C.

A. 358, it was held by this court, speaking through Judge (now Mr. Justice) Day, that to permit a demand to be made on the defendant in a criminal case in the presence of the jury to produce a paper or document containing evidence against him is a violation of the immunity secured to him by the fifth amendment to the Constitution, even although no order for the production of the paper is made, and the demand is made simply because of its supposed necessity to authorize the introduction of secondary evidence; Judge Day saying that the accused, "by the demand made upon him before the jury, *after proof tending to show his possession of the document, was required* either to produce it, deny or explain his want of possession of the writing, or by his very silence permit inferences to be drawn against him quite as prejudicial as positive testimony would be." But in the case before us the defendants have not, in our opinion, reserved the right to complain, for no exception was taken to the action of counsel or of the court. The only record relied upon as an exception is the fact that, to the statement of the attorney for the government that he was going to ask "the gentlemen" to let a man go to the receiver's office to bring the books to the courtroom, the defendants' counsel retorted, "No, sir." This cannot be construed as an exception. It is proper to add that it is by no means obvious that the demand in question was calculated to prejudice defendants, for the court, in the presence of the jury, treated the books as in the sole custody of the state court, and subject to its orders. There is thus apparently no room for assuming that the jury was given leave to infer that the defendants had, upon notice and demand, refused to produce the books. McKnight v. United States, 122 Fed. 926, 930, 61 C. C. A. 112.

The competency of the testimony as to the contents of the books is attacked, first, because of alleged failure to identify them as the books of the defendants; second, that no foundation was laid for the introduction of secondary evidence of the contents of the books. As to the identity of the books: It is true that no one testified directly that the books were those of the O'Dell Brokerage Company. There was, however, in our opinion, sufficient prima facie evidence to warrant the court in admitting proof of the contents, if otherwise made competent. The court did not thereby finally determine the question of fact of identity. It was still a question for the jury. There was testimony that Williams, the attorney for the receiver, and, as we understand it, a partner of the receiver Cogan, stated to the attorney for the government that, if the latter's accountant would come to the office of the receiver's attorney, the latter would furnish him a room in the office and with the books, and would give every accommodation for their examination; the witness adding, "and that he did." The testimony indicated that the accountant was furnished, in the office of Cogan & Williams, with certain books purporting to be those of the O'Dell Brokerage Company; a list of the books examined being given by the witness, and in some cases the dates covered by the transactions contained. The books were so marked as to furnish prima facie evidence that they were the books of that company. Moreover, their contents, as testified to by the expert, in connection with other testimony as to

the transactions appearing therein, furnished some inherent evidence of the identity of the books.

Was a proper foundation laid for the introduction of secondary evidence of the contents of the books? It clearly appeared that it was impossible for the government to procure the presence of the books upon the trial. A subpœna had been issued for their production, and served upon the receiver. That officer had failed to produce the books, and all efforts in that direction failed. In these circumstances, it was proper to give parol proof of the contents of the books, provided the proof of such contents was not immaterial or otherwise incompetent. No claim could well be made that the testimony in question was immaterial.

It is, however, earnestly insisted in this court that no proper foundation was laid for the introduction in evidence of the contents of the books, for the reason that before the books can be introduced, or evidence of their contents given, it must be made to appear that the books are those of original entry, made in the regular course of business, by one whose duty or custom it was so to do; that the entries themselves are accurate, and made contemporaneously with the facts recited, and if the bookkeeper or party who made the entries is living and competent to testify, that he be produced, or in the event that he is dead, insane, or beyond the process of the court, that proof be made of his handwriting; and that none of these requirements was complied with.

We may properly pass by this ground of objection, for the reason that such objection does not appear to have been raised in the court below. The only grounds of objection presented against the introduction of evidence of the contents of the books were, first, that the books were not shown to be those of the brokerage company; and, second, that no proper foundation was laid for the introduction of secondary evidence of their contents. The only ground suggested as basis of the second objection is the alleged failure of proof that the books could not be produced. Neither in the objections made by counsel, in the remarks of the court in discussing and deciding the objections, nor in the assignments of error, are we able to find anything suggesting that the attention of the court was called to the failure to authenticate the entries in question in the respects above referred to. The books of a party are admissible on behalf of an adverse party, when in the nature of admissions by such party, and without the necessity of strict authentication beyond establishing the identity of the books. 2 Wigmore on Evidence, § 1557; Currier v. B. & M. Ry. Co., 31 N. H. 209; Globe Savings Bank v. National Bank, 64 Neb. 413, 89 N. W. 1030. The books in question were not, strictly speaking, the books of the defendants; but the entries in the books of a corporation, showing dealings between it and its managers, are competent evidence against the latter, upon proof of such connection and familiarity with the books as to justify an inference of actual acquaintance with their contents, on the basis of admissions or assertions of the facts stated therein. People v. Leonard, 106 Cal. 302, 39 Pac. 617; Olney v. Chadsey, 7 R. I. 224; Bacon v. United States, 97 Fed. 35, 38 C. C. A. 37. Charges in an account of an officer of a corporation, kept on

the corporation's books, and known and not objected to by him, are competent as admissions. Bird v. Magowan (N. J. Ch.) 43 Atl. 278.

Without deciding whether the evidence of the connection and acquaintance on the part of the defendants, other than Gorman, with the books of the brokerage company, was sufficient to sustain a presumption of such familiarity with them as to make them prima facie evidence as admissions by the defendants, it is enough to say that had such objection been made, the government may have been able, for anything that appears upon this record, to supply the proof of the authentication whose absence is now urged as defeating the competency of the proof. We say this for the reasons that there was testimony that a bookkeeping department was maintained in connection with the business of the brokerage company, and a force of bookkeepers in connection therewith; that the testimony showed that the five defendants other than Gorman were the sole incorporators and constituted the board of directors of the brokerage company, Foster being president, Heil vice president, and Campbell secretary and treasurer; that there was express testimony that the defendants other than Gorman actively participated in the management of the business of the brokerage company, all except Foster being about the office of that company, Foster, however, spending the most of his time at the office of Foster & Co.; the defendant Heil being shown to have worked upon one set of books, but whether upon the set here in question does not appear.

We do not find it necessary to consider the suggestion, if such be intended to be raised, that the expert's examination testified to was obtained in breach of the privilege of the defendants, as under order of the court in the receivership proceedings, rather than by the consent of the defendants through their counsel. The testimony does not seem to have been objected to on that ground. There is no assignment of error which we can identify as relating to that subject. It may be added that it is at least open to question whether the fact (if it be a fact) that the examination was made under an invalid exertion of authority on the part of the court in the receivership proceedings would constitute a valid objection to evidence procured by such examination. Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575. We find no error in the reception of the testimony of the contents of the books.

We think no error was committed in permitting testimony that neither Foster & Co. nor the brokerage company were members of the New York Stock Exchange and the Chicago Board of Trade. The admissibility of this testimony is challenged in this court, first, as being hearsay; and, second, as not addressed to any allegation in the indictment. The objection that the testimony is hearsay was not made below, and may be disregarded here. Schlemmer v. Buffalo, etc., Ry. Co., 205 U. S. 1, 9, 27 Sup. Ct. 407, 51 L. Ed. 681. It is true the indictment does not charge that either Foster & Co. or the brokerage company were not members of either the Stock Exchange or Board of Trade referred to; but we cannot say that the testimony was wholly immaterial upon the question of the fraudulent nature of the alleged scheme.

Error is assigned upon the action of the court in allowing the use of written statements to refresh the recollection of the witnesses Douglass and Brisbin. In each case the statement used was one given by the witness to a post office inspector. In neither case was the statement read or its contents given to the jury. The recollection of the witness Brisbin was not refreshed by reference to the statement. In his case, therefore, no prejudice could have resulted. As to the witness Douglass, the ground of the objection urged here is that the statement was made several months after the transaction involved in it, and therefore was incompetent, under the decision in Putnam v. United States, 162 U. S. 687, 16 Sup. Ct. 923, 40 L. Ed. 1118, as not being a contemporaneous writing. This precise ground of objection was not presented upon the trial. The grounds of objection there presented do not impress us as weighty. Moreover, we construe the final statement of the witness as a disclaimer of any refreshing of his recollection by the statement in question. The error under consideration is therefore, in our judgment, not well assigned.

Error is assigned upon the admission in evidence of the petition of defendant Scott for the appointment of a receiver of the O'Dell Brokerage Company and the order of such appointment. The court admitted the evidence only as against the defendant Scott. It is contended that, as to him, the admission is in violation of section 860 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 661), which forbids that any pleading of a party be given in evidence, in any court of the United States, in any criminal proceeding. A sufficient reply to this contention is found in the fact that defendants' counsel not only did not object to the admission of this evidence as against the defendant Scott, but, on the contrary, expressly disclaimed any objection thereto. On behalf of the other defendants, it is urged that the ruling admitting the testimony as to the defendant Scott alone was made in the absence of the jury, and that when the papers were read to the jury no statement was made that they were to be considered as evidence only as against the defendant Scott. But the record shows that no objection was taken to the failure to instruct the jury that the evidence was admitted only as to the defendant Scott. Both court and counsel apparently overlooked the fact that the court's previous direction was in the absence of the jury. If defendants' counsel understood the evidence was being received as against all the defendants, it was his duty to object thereto. The case should not be reversed on account of this apparent inadvertence on the part of counsel as well as the court. Indeed, the testimony could not have prejudiced the remaining defendants, as defendants' counsel, in the course of cross-examination, had expressly assumed the fact that the brokerage company had gone into the hands of a receiver.

Complaint is made of the refusal of the court to permit certain questions to be asked the witness Douglass on cross-examination, upon the ground that the questions had no relation to the subject of the direct examination. There was no error in this exclusion. It is the general rule in the federal courts that a party has no right to cross-examine a witness without leave of the court as to any facts or circumstances

178 F.—12

not connected with matters stated in his direct examination. McKnight v. United States, 122 Fed. 926, 928, 61 C. C. A. 112, and cases there cited. This rule applies to criminal as well as to civil cases. The attempted cross-examination was within this general rule.

The court admitted in evidence the following notice:

"To All: Messrs. Gorman and Dudley retiring from the O'Dell Stock Co. have gratiously (sic) turned the entire business over to their employés with its entire paid-in capitalization of $250,000, and fortifying them with a surplus of $500,000 additional. The style of the new firm will be the O'Dell Brokerage Company. Messrs. Gorman and Dudley extend their sincerest thanks for all past favors and trust that all correspondents will continue to do business on the same amiable terms with the new firm as with that of the old.

"The O'Dell Brokerage Company,
"Per L. W. Foster, Prest."

There was testimony tending to show that the signature was that of the defendant Foster, also that the notice was prepared for sending out; but there was no testimony that it was actually sent. Its admission was objected to, first, as not covered by any allegation in the indictment; and, second, for lack of proof that the paper or its contents actually left the office of the brokerage company. In our opinion, the paper was admissible. It is true that it is not referred to in the indictment, but the rules of criminal pleading do not require the indictment to set forth the evidence. Evans v. United States, 153 U. S. 584, 590, 14 Sup. Ct. 934, 38 L. Ed. 830; Stokes v. United States, 157 U. S. 187, 191, 15 Sup. Ct. 617, 39 L. Ed. 667. The fact that it was prepared apparently with the purpose of sending it out is some evidence bearing upon the intention and alleged scheme of the defendants. In the case of an alleged fraudulent scheme, considerable latitude is permitted in the admission of proof of facts, both in support of and in denial of the charge. Wharton's Criminal Evidence (9th Ed.) § 24. We think the testimony as to the relations of the defendants other than Gorman to the business of the brokerage company was such as to permit an inference, especially in the absence of testimony to the contrary, that the defendants knew of the preparation of the paper.

We have thus considered all the assignments which have been urged, orally or in brief.

In our opinion, no error has been committed to the prejudice of the defendants other than Gorman. As to him the judgment should be reversed, and he be given a new trial. As to the remaining defendants, the judgment of the District Court should be affirmed.